Argued June 6; affirmed June 27, 1944

## CITY OF PORTLAND v. THORNTON
(149 P. (2d) 972)

Before Bailey, Chief Justice, Belt, Rossman, Kelly, Lusk, Brand and Hay, Associate Justices.

*Lyman E. Latourette,* City Attorney, and *Joseph O. Stearns, Jr.,* both of Portland (Lyman E. Latourette, City Attorney, and John B. Seabrook, Deputy City Attorney, both of Portland, on the brief), for respondent.

*Carl D. Etling* and *Harlow C. Barber,* both of Portland (Carl D. Etling and Harlow C. Barber, both of Portland, Roy Albert Swayze, of Arlington, Va., and Hayden C. Covington, of Brooklyn, N. Y., on the brief), for appellant.

BELT, J. The defendant, on October 27, 1942, was convicted of violating Ordinance No. 76339 of the city of Portland in that she permitted her daughter 10 years of age to "expose and offer for sale on the street a newspaper, magazine, or periodical." A fine of $25.00 was imposed upon defendant by the municipal court, whereupon she appealed to the circuit court for Multnomah county. The cause was submitted to the circuit court, without a jury, and, after hearing, the defendant was found guilty as charged and sentenced to pay a fine of $25.00. Hence the appeal to this court.

Section 16-903 of the above ordinance provides:

"SELLING OF NEWSPAPERS BY BOYS UNDER TEN YEARS AND GIRLS UNDER EIGHTEEN YEARS PROHIBITED. It shall be unlawful for the parent, guardian, custodian or person having charge or control of any boy under the age of ten years or of any girl under the age of eighteen years to permit any such boy or girl to sell, expose or offer for sale on any street any newspaper, magazine or periodical; and it shall be unlawful for any such boy or girl to sell, expose or offer for sale on any street any newspaper, magazine or periodical."

There is no material conflict in the evidence. Defendant and her daughter Brooke are Jehovah's Witnesses and, according to their testimony, are ordained ministers of the gospel. Defendant appeared regularly each week on the streets of Portland to preach the gospel, as she says, by public distribution of the Watchtower and Consolation magazines. These magazines are carried in a bag upon which is printed in large letters: "The Watchtower and Consolation—5¢ per copy." It is conceded that Brooke often accompanied her mother and engaged in such work. Defendant admits that her daughter was, on the day in question, thus "preaching the gospel," with her consent and approval but that, at all times, she stood a few feet from her and kept constant surveillance over her child. Defendant contends that the magazines were not sold but were distributed to those who made "contributions" for the same. It is said that no person, however, was denied such literature on account of inability to make such "contribution". The finding of the trial court, however, is conclusive that Brooke sold or offered for sale these mazagines, which were supplied to Jehovah's Witnesses by Watchtower Bible and Tract Society, Inc., of Brooklyn, New York, at a charge of 2½¢ per copy.

This appeal involves questions of law and not of fact. Appellant contends: (1) That the ordinance, as properly construed, applies only to the commercial exploitation of children of tender years and was never intended to prohibit children from thus worshipping God by distributing such literature upon the public streets; (2) that the ordinance, as construed and applied by the circuit court to the facts in this case, deprives defendant of her right to worship God in accordance with the dictates of her own conscience and,

therefore, violates both the federal and the state Constitutions.

Since the appeal was perfected in this court, the Supreme Court of the United States, on January 31, 1944, in *Sarah Prince v. Commonwealth of Massachusetts*, 321 U. S. 158, 88 L. Ed. 645, 64 S. Ct. 438, sustained the validity of sections 80 and 81 of the child labor law of Massachusetts (Ch. 149, Gen. Laws of Mass.) which prohibit any parent from permitting, in violation of section 69 of the act, any boy under twelve or any girl under 18 to ''sell, expose or offer for sale any newspapers, magazines, periodicals or other articles of merchandise of any description, or exercise the trade of bootblack or scavenger, or any other trade, in any street or public place.'' The Prince case involved the Jehovah's Witnesses and is based upon a similar factual situation. It was urged there, as here, that such exercise of the police power infringed upon freedom of worship as guaranteed by the First and Fourteenth Amendments to the Constitution of the United States. The Supreme Court, however, held that the enactment of the statute was a reasonable exercise of the police power and that it was not forbidden by the Fourteenth Amendment. Counsel for appellant, with commendable frankness, concede that the Prince decision is controlling and is adverse to their contentions based upon alleged violation of the federal Constitution, but nevertheless contend that, under the Constitution of this state, defendant is entitled to relief against infringement of her religious liberty. In other words, this court is urged by defendant to refuse to follow the decision of the United States Supreme Court in the Prince case, and to so construe the Constitution of this state as to afford defendant protection in the practice of her religion.

■ The effect of decisions of federal courts on state tribunals depends upon the nature of the question in controversy: 14 Am. Jur. 335, Courts § 115. We agree that, in the instant case, the decision of the Supreme Court of the United States is not conclusive as to the construction of the state Constitution. It is, however, highly persuasive, especially where fundamental constitutional rights are involved.

The rule applicable is thus stated in 21 C. J. S. 363, Courts § 205:

"* * * where the question presented is as to the construction or violation of a provision of the state constitution which is similar to a provision of the federal constitution, and the same question has been decided by the federal supreme court with respect to the federal constitution, the federal decision is strongly persuasive as authority, and is generally acquiesced in by the state courts, although it is not absolutely binding." Citing numerous authorities in support of the text.

Also, to the same effect, see 14 Am. Jur. 338, Courts § 119.

■ The guaranty of religious freedom by the First Amendment of the federal Constitution is identical in meaning with the constitutional provisions of this state relative to the same right although expressed in different language. In the First Amendment of the federal Constitution, it is provided that:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof * * *."

Article I of the Bill of Rights in the Constitution of Oregon, § 2 thereof, provides:

"All men shall be secured in the natural right to worship Almighty God according to the dictates of their own consciences."

Section 3:

"No law shall in any case whatever control the free exercise and enjoyment of religious opinions, or interfere with the rights of conscience."
Section 4:

"No religious test shall be required as a qualification for any office of trust or profit."

Obviously, the same thought, so clearly and concisely expressed by the framers of our federal Constitution, is conveyed in the more extended declaration of rights found in the Constitution of this state.

■ The federal Supreme Court has given a liberal construction to the First Article to the end that the right of religious freedom be zealously guarded and protected: *West Va. State Board of Education v. Barnette,* 319 U. S. 624, 87 L. Ed. 1628, 63 S. Ct. 1178; 147 A. L. R. 674.; *Pierce v. Society of Sisters,* 268 U. S. 510, 69 L. Ed. 1070, 45 S. Ct. 571, 39 A. L. R. 468. It has never held, however, that the exercise of free speech or the practice of religion is beyond reasonable limitation. In the Prince case the court concluded that the statute in question—similar to the ordinance here involved—was a proper exercise of the police power in that it tended to protect the health and moral welfare of children of tender years. While this court is not .bound by such decision, we see no cogent reason for failing to follow it. We think the ordinance of the city of Portland was enacted for the same purpose as the statute of Massachusetts and that it should receive the same construction as that announced by the Supreme Court of the United States.

Judgment is affirmed.