UNITARIAN CHURCH WEST, a Wisconsin corporation, et al., Plaintiffs,

v.

Richard B. McCONNELL, District Attorney, Waukesha County, and his agents, employees, successors in office, assistants, and all others acting in concert or cooperation with him or at his direction or under his control, Defendants.

Civ. A. No. 72-C-22.

United States District Court,
E. D. Wisconsin.

Feb. 11, 1972.

James M. Shellow, and Stephen M. Glynn, Milwaukee, Wis., for plaintiffs.

Willis J. Zick, Corp. Counsel of Waukesha Co., Waukesha, Wis., for defendants.

## OPINION AND ORDER

REYNOLDS, Chief Judge.

This is an action by the plaintiff church, parents, and children to enjoin the defendant district attorney from prosecuting them under state obscenity laws for teaching a sex education course as part of their Sunday school program. The plaintiffs also seek a declaration that under the First and Ninth Amendments to the United States Constitution they have a right to teach such a course. The dispute seems to primarily turn around the proposed use of photographs of homosexual and heterosexual activity.

This action is brought pursuant to 28 U.S.C. §§ 1331(a), 1343(3), and 42 U.S.C. § 1983 whose pertinent parts provide as follows:

"§ 1331. Federal question;
* * *.

"(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy * * * arises under the Constitution, laws, * * * of the United States."

"§ 1343. Civil rights * * *

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

* * * * * *

"(3) To redress the deprivation, under color of any State law, statute, * * * of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

* * *."

"§ 1983. Civil action for deprivation of rights

"Every person who, under color of any statute * * * of any State * * * subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The plaintiffs' motion for a preliminary injunction is now before this court for decision. A hearing was held on the motion on January 26, 1972. The following findings and conclusions of law are made only for the purpose of deciding this motion and are not to be considered a final determination of the issues which will be made at trial.

## FACTS

Based on the complaint, affidavits on file, and representations of counsel, I find that the plaintiffs are: (1) the Unitarian Church West of Brookfield, Wisconsin (hereinafter "Church"); (2) Rev. Robert C. A. Moore, the pastor of the Church and the father of a boy enrolled in the Sunday school; (3) Bruce Dakin, a member of the board of trustees and the father of a boy enrolled in the Sunday school; (4) Mark Sewell, a minor and Church member who is enrolled in the course; and (5) John Doe and Mary Doe,* a married couple who are members of the Church and who will teach the sex education course in the Sunday school. The defendant Richard B. McConnell is the district attorney of Waukesha County, Wisconsin, and is acting under color of the statutes of the State of Wisconsin.

The Church has announced that it intends to offer, as part of its Sunday school, a course about sex entitled "About Your Sexuality." This course was developed under the auspices of the Unitarian Universalist Association, the parent body of the Church. The course is being sponsored by the members of the Church in order to give their children, what they believe to be, a necessary and better education in sex than they could get elsewhere. The course, forty hours in length, may include still pictures of heterosexual and homosexual acts. The showing of the photographs will constitute less than one-half hour of the course.

The proposed course has been carefully developed by professionals and twenty-five Unitarian churches around the country. After looking into the program and participating in a number of orientation sessions, the local Church decided to participate in the program and selected John Doe and Mary Doe to teach the course. The Does have received extensive special training in order to teach this course.

Plaintiffs allege that sex is so intertwined with moral, ethical, and theological values that it constitutes an integral part of the ethical basis of a Unitarian. They further allege that "About Your Sexuality" was developed and will be presented because other available sex education programs, e. g., the public

---

* At their request, these two plaintiffs have been permitted by court order to proceed under fictitious names.

schools, fail to present sex in a context in which religious and ethical values are paramount. This failure has prompted them to prepare a course which they feel will provide Unitarian children with a proper ethical basis for future attitudes toward sexual behavior by providing the children with an understanding that sex is but one aspect of the personal relations between individuals in our society and not a matter isolated from ethical and moral considerations. In oral argument the district attorney, while not disputing the sincerity of plaintiffs' beliefs, argued that as he understood Unitarian theology, sex education is not intertwined with the *basic* tenets of the religion.

Participation in the course is to be limited to children of the congregation who have the consent of at least one parent who has attended a parent orientation session wherein the course is explained, including all pictures used.

The course was scheduled to start January 16, 1972, but because of the hereinafter described activities of the district attorney, the course has been postponed.

On December 21, 1971, the defendant district attorney sent a letter to Rev. Moore in which it was stated:

"This office and the City of Brookfield Police Department have received several complaints concerning your forthcoming sex education program for children, which was the subject of a feature article in the Milwaukee Journal on December 11, 1971. The chief complaints are that you apparently are going to exhibit to the children films depicting explicit sex acts.

"While this office is only concerned with enforcing the Wisconsin Criminal Statutes, and in no way do I intend to act as censor; or for that matter, interfer [sic] with the right of a religious group such as yours to instruct its members or their children in religion, I am concerned with what may be a violation of the Wisconsin Obscenity Statutes.

"I would therefore ask that you contact me at your earliest convenience so that we may arrange a meeting with your church council and attorney to discuss this situation. I must admonish you that should you proceed with this program without first establishing 'ground rules' with this office, prosecution could result."

After receiving this letter the Church board held two special meetings, and it was decided to comply with the district attorney's request for a meeting. The meeting took place on January 7, 1972, in the district attorney's office. The district attorney requested (1) to see the course material, (2) the context in which it would be used, (3) the background of the teachers, and (4) whether any objectionable sexual conduct was going to be encouraged. In addition, the district attorney stated that the course might be a violation of Wisconsin's obscenity laws, and that if his requests were not complied with, then the Church proceeded at its own peril and would be subject to prosecution should he later conclude that the course constituted a criminal violation.

The plaintiffs further allege that the district attorney stated that if he were not allowed to preview the materials, "action would be taken," "something would have to be seized," and members of the congregation "should be worried about prosecution." In addition, it is alleged that the district attorney said he would prosecute if, after he was shown the materials, those portions that he considered objectionable were not removed. The defendant further stated that "the threat of prosecution I made in the letter stands." The district attorney does not deny making these remarks but claims they were taken out of context and states in his affidavit of January 26, 1972, that at no time has he ever threatened that "he definitely would prosecute."

The Church representative conveyed defendants' views to the Church trustees. On January 11, 1972, the Church

board decided to refuse defendants' requests.

At the hearing in this court on January 26, 1972, the district attorney filed an affidavit in which he stated that he would—

"15. * * * continue his request for information concerning the proposed sex education course and particularly to inspect the visual aids proposed to be included in the said course * * *;

"16. That in the event these materials are not presented for inspected [sic] to Affiant prior to the commencement of the course it is Affiant's intention to treat this matter as he would any other matter where a complaint concerning a violation of a criminal statute has been received and utilize whatever investigative process he has at his disposal to determine whether or not a violation has occurred. Under no circumstances would a criminal prosecution be maintained until evidence other than hearsay has been received which either establishes or refutes the allegations contained in the complaint. That affiant is acting in good faith and stands ready only to perform his statutory duties."

The plaintiffs, being unwilling to submit to what they consider the district attorney's attempt at censorship yet fearing the threatened criminal prosecution, have postponed the commencement of the course.

There is no substantial dispute about the above facts. Additional facts which are necessary to the resolution of this motion are set forth below in the discussion of the law involved.

## CONCLUSIONS OF LAW

This case presents the following legal problems which I have considered and will deal with here: (1) requirements for the issuance of a preliminary injunction, (2) plaintiffs' standing to bring this suit, (3) constitutional right of freedom of religion, (4) constitutional right of parents to educate their children, and (5) constitutional right of freedom of speech.

■ *Preliminary Injunction.* In order to obtain a preliminary injunction, the moving party must satisfy the court that in all probability he will prevail on a trial of the issues and that he will suffer irreparable harm if the preliminary injunction is not issued. See generally Moore's Federal Practice, § 65.04 [1], et seq.

■ For the reasons set forth below and based on the present record, at this time I conclude that the plaintiffs will in all probability be successful on a trial of the issues herein involved. This conclusion is made only for the purpose of deciding this motion and in no way prevents either party from proving their case at trial if they are able to do so.

For the reasons that follow, I further find that the plaintiffs will suffer irreparable harm if a preliminary injunction is not issued.

■ *Standing.* In all likelihood plaintiffs have proper standing to maintain this suit. This is not a case where the complaint lacks "any specific threat by any officer * * * to arrest or prosecute * * *" or where it "appears from the allegations * * * [that plaintiffs] made a search of state statutes and city ordinances with a view to picking out certain ones that they thought might possibly be used by the authorities * * *." Boyle v. Landry, 401 U.S. 77, 81, 91 S.Ct. 758, 760, 27 L.Ed.2d 696 (1971). Nor is this a case where plaintiffs merely claim that they "feel inhibited" by a statute on the books. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). On the contrary, plaintiffs in effect allege and swear that they had no fears with regard to their religious school curriculum *until* they received the district attorney's letter and met with him. There is no question but that the plaintiffs interpreted the district attorney's statements and letter as a threat, and I believe and find that he intended that they have such an effect. In all likeli-

hood it will be found as a matter of law that standing is properly asserted when the district attorney threatens the possibility of prosecution if the threatened party pursues his intended course without first agreeing to a system of prior censorship or approval.

*Freedom of Religion.* In the whole galaxy of constitutional rights, there is none that is more important than the "freedom of religion." It is enshrined in our history, heritage, customs, and laws. Many of the first settlers of the new world came in search of this freedom. It was foremost in the minds of many of our nation's founding fathers, perhaps the most notable being Thomas Jefferson. States, such as Virginia, and federal laws, such as the Northwest Ordinance, guaranteed religious liberty even before the drafters of our Constitution met in Philadelphia. Ratification of the Constitution came only after it was agreed that this freedom would be affirmatively protected, and one of the first acts of the United States under its new Constitution was to amend that Constitution to prevent any law "prohibiting the free exercise" of religion.

■■ The plaintiffs swear in their affidavits that "About Your Sexuality" is a part of their religious exercise. The district attorney does not dispute this. He argues, however, that *as he understands* Unitarianism, sex education is not intertwined with the "basic" tenets of the religion, and that therefore it is improper to view this case as dealing, in a constitutional sense, with religious practice. This position is without merit. The protection the Constitution extends to the exercise of religion does not turn on the theological importance of the disputed activity. Rather constitutional protection is triggered by the fact that it is religious. The Supreme Court has said that "Man's relation to his God * * * [is] no concern of the state." United States v. Ballard, 322 U.S. 78, 87, 64 S.Ct. 882, 886, 88 L.Ed. 1148 (1944). *And it is* neither the function of the state nor this court to continue to probe once it

is found that the activity is prompted by sincere religious conviction. The Constitution "granted the right to worship as he [the citizen] pleased and to answer to no man for the verity of his religious views. * * * [This holds true even though such views] might seem incredible, if not preposterous, to most people." *Id.* I turn next to the nature of the constitutional protection afforded the exercise of religion.

■ The Constitution guarantees protection from state interference in the exercise of religious beliefs except when such exercise presents a substantial threat to public safety, peace, or order. Only when such a threat is presented may it be said that there is a countervailing state interest of overriding significance which is so compelling as to justify state interference with religious liberty. Sherbert v. Verner, 374 U.S. 398, 403, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); Boddie v. Connecticut, 401 U.S. 371, 377, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Founding Church of Scientology of Washington, D. C., v. United States, 133 U.S.App.D.C. 229, 409 F.2d 1146, 1154 (1969). The question then before me today is whether the disputed sex education course poses such a substantial threat to the public that the state has the compelling interest of overriding significance necessary to interfere with plaintiffs' religious liberty.

■ Defendants' position is that "About Your Sexuality" may constitute a violation of the obscenity law. Under the law as it is now interpreted, the state has a rational interest in preventing obscenity. Roth v. United States, 354 U.S. 476, 487, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). However, it is equally clear that this rational interest does not empower the state to interfere with protected constitutional rights in its quest to stamp out obscenity. United States v. Reidel, 402 U.S. 351, 356, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971). As Justice Harlan succinctly put it:

" * * * the power which *Roth* recognized in both state and federal Gov-

ernments to proscribe obscenity as constitutionally unprotected cannot be exercised to the exclusion of other constitutionally protected interests of the individual. * * *" *Id.* at 359, 91 S.Ct. at 1414 (concurring).

In Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.E.2d 542 (1969), the Supreme Court found that the state's interest in suppressing obscenity was insufficiently compelling or overriding to allow it to invade the individual's fundamental right to privacy. I find that in all probability it will ultimately be found that similarly the state's interest in preventing obscenity is neither compelling nor overriding in light of plaintiffs' right to free exercise of religion.

*Protected Parental Right.* "[C]onstitutional interpretation has consistently recognized that the parents' claim to authority in their own household to direct the rearing of their children is basic in the structure of our society. 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' " Ginsberg v. New York, 390 U.S. 629, 639, 88 S.Ct. 1274, 1280, 20 L. Ed.2d 195 (1968). Or as the court stated in Pierce, Governor of Oregon v. Society of Sisters, 268 U.S. 510, 535, 45 S. Ct. 571, 573, 69 L.Ed. 1070 (1925):

" * * * The child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations."

The Supreme Court has held that while the state has a rational interest in educating children in public schools and preventing the teaching of the German language, it cannot prevent parents from privately educating their children or from having their children taught German. *Id.*, Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). Closer to the case at hand, I note not only *Stanley,* discussed supra, but also Ginsberg v. New York, supra, wherein the court upheld a statute regulating the distribution of obscenity to minors only after stating:

" * * * the prohibition against sales to minors does not bar parents who so desire from purchasing the magazines for their children." 390 U.S. at 639, 88 S.Ct. at 1280.

In this case parents wish to educate their children in the facts of life within a proper ethical, moral, and religious context before they learn about such facts *sans* such context in the public schools or from the street. I find that there is a substantial likelihood that the district attorney's interest with regard to "About Your Sexuality" lacks either a compelling quality or overriding significance in light of the parental right and duty to educate their children.

*Freedom of Speech.* In Roth v. United States, 354 U.S. 476, 487–488, 77 S. Ct. 1304, 1310, 1 L.Ed.2d 1498 (1957), the Supreme Court stated:

" * * * The protrayal of sex, *e.g.,* in art, literature and scientific works, is not itself sufficient reason to deny material the constitutional protection of freedom of speech and press. Sex, a great and mysterious motive force in human life, has indisputably been a subject of absorbing interest to mankind through the ages; it is one of the vital problems of human interest and public concern. As to all such problems, this Court said in Thornhill v. State of Alabama, 310 U.S. 88, 101–102 [60 S.Ct. 736, 744, 84 L.Ed. 1093]:

" 'The freedom of speech and of the press guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully *all matters of public concern* without previous restraint or fear of subsequent punishment. The exigencies of the colonial period and the efforts to secure freedom from oppressive administration developed a broadened con-

ception of these liberties as adequate to supply the public need for *information and education with respect to the significant issues of the times. . . .* Freedom of discussion, if it would fulfill its historic function in this nation, must embrace *all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period.'* (Emphasis added.)"

■ Considering "About Your Sexuality" as a whole, *Roth,* supra at 489, 77 S.Ct. 1304, and assuming the nude photographs to be of the worst type, and in light of the facts set forth above, I find that:

1. The plaintiffs will in all probability ultimately prevail in demonstrating that the course taken as a whole is neither intended to nor will it produce a prurient interest, i.e., "a shameful or morbid interest in nudity, sex, or excretion," *Roth,* supra, at 487 n. 20, 77 S.Ct. at 1310, in the minds of the students the course is directed at. Cf. Mishkin v. New York, 383 U.S. 502, 508, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966).

2. In any case there is a strong probability that the social value in "About Your Sexuality" overwhelms any alleged negative factors.

Accordingly, I find that there is a strong likelihood that "About Your Sexuality" will be found not to be obscene and therefore protected speech under the First Amendment.

*Irreparable Harm.* The district attorney, upon receiving complaints about the plaintiffs' proposed sex education course, set out to establish an informal system of prior inspection and censorship. The Supreme Court in dealing with an analogous formal system of prior review described it and concluded as follows:

"[The state officer] is empowered to determine whether the cause is a religious one, and * * * the issue of a certificate [to solicit] depends upon * * * [this] affirmative action. If

he finds that the cause is not that of religion, to solicit for it becomes a crime. * * * His decision to issue or refuse it involves appraisal of facts, the exercise of judgment, and the formation of an opinion. * * * Such a censorship of religion as the means of determining its right to survive is a denial of liberty protected by the First Amendment * * *.

\* \* \* \* \* \*

" * * * Moreover, the availability of a judicial remedy for abuses in the system of licensing still leaves that system one of previous restraint * * * [which is] obnoxious tó the Constitution * * *." Cantwell v. Connecticut, 310 U.S. 296, 305–306, 60 S.Ct. 900, 904, 84 L.Ed. 1213 (1940).

Defendant further sought to build and maintain his system of review upon explicit threats of possible prosecution should plaintiffs fail to follow the district attorney's lead. In effect then what happened was that the district attorney, in an effort to establish a procedure, which may well be in violation of the Constitution, conscientiously chilled the exercise of three of the most fundamental rights an American citizen possesses. That he succeeded is all too clear, for in point of fact the plaintiffs have delayed their Sunday school program out of fear of prosecution. This alone constitutes irreparable harm.

In addition, however, it must be noted that should the Church decide that it will call off the course, being unwilling to either submit to prior review or risk prosecution or alternatively submit to prior review and as a result delete certain portions of the course at defendants' request, then the children enrolled in the course and their parents may well be left bereft of any judicial forum to assert their rights. If the course is dropped or amended in accordance with the district attorney's direction, then the district attorney is left without a crime to charge and the parents and children are left with a moot case of squashed constitutional rights. There

can be then little doubt that irreparable harm is in the offing should I fail to issue a preliminary injunction. Irreparable harm would result either because of an impermissible delay in the exercise of constitutional rights or because of the actual suppression of those rights.

## CONCLUSION

 The issue in this case is twofold. The first aspect is whether churches or parents in teaching their children about sex can be limited to silence and cryptic admonitions, or whether they can instead engage in a candid conversation. I find that merely because many may be ashamed or embarrassed or find it immoral to discuss human sexuality, this is an insufficient basis for the curbing of the truth. As the Supreme Court stated in Griswold v. Connecticut, 381 U.S. 479, 482, 85 S.Ct. 1678, 1680, 14 L.Ed.2d 510 (1965), a case which struck down a conviction for the dissemination of information on the prevention of conception, "the State may not, consistently with the spirit of the First Amendment, contract the spectrum of available knowledge."

The second aspect is whether the state in an effort to suppress obscenity can pursue a course which chills the exercise of three of the most fundamental rights an American has, i.e., freedom of religion, freedom of parents to educate their children, and freedom of speech—three rights which are so synonymous with the United States that it is impossible to conceive of our nation without them. I find that the state cannot.

It is therefore ordered that pending a final determination of this action, the defendants are enjoined from prosecuting plaintiffs or interfering with them in any way for any activities related to the presentation of the sex education course "About Your Sexuality" on the basis that said course is obscene.