Argued May 23, affirmed June 23, reconsideration denied July 30, petition for review denied September 3, 1975

STATE OF OREGON, *Respondent, v.* REGINALD ROLAND SOTO (No. 15-685), *Appellant.*

537 P2d 142

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Donald L. Paillette,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FOLEY, J.

The defendant was convicted of unlawfully possessing mescaline, a dangerous drug, and was placed on probation for three years. He appeals, assigning as error the refusal of the trial court to allow him to present as a defense to the charge evidence of his religous beliefs, i.e., that peyote (containing mescaline) is an integral part of the religious ceremonies of his church, the Native American Church, and is carried by him only for its religious significance. He thus contends that the statute, ORS 167.207, which makes criminal possession of a dangerous drug, prevents him from engaging in the free exercise of his religion.

The First Amendment to the United States Constitution, guaranteeing the free exercise of religion, precludes the government of the United States or of any state from infringing upon a person's religious belief.[1] *Cantwell v. Connecticut,* 310 US 296, 60 S Ct 900, 84 L Ed 1213, 128 ALR 1352 (1940). Distinction is made, however, between religious belief and religious practice. In *Reynolds v. United States,* 98 US 145, 25 L Ed 244 (1878), the Supreme Court said, in denying Mormons an exception from anti-bigamy laws:

"* * * Laws are made for the government of actions, and while they cannot interfere with mere religious belief and opinions, they may [interfere] with practices. * * *" 98 US at 166.

*Cantwell* also pointed out the two-pronged concept of the First Amendment, saying that the First Amendment

"* * * embraces two concepts, —freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. * * *" 310 US at 303-304.

---

[1] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof * * *." U.S. Constitution, Amend. I.

Thereafter, in accordance with the principles set forth in *Cantwell* and *Reynolds,* the Supreme Court in *Braunfeld v. Brown,* 366 US 599, 603-604, 81 S Ct 1144, 6 L Ed 2d 563 (1961), stated:

> "* * * [T]he freedom to act, even when the action is in accord with one's religious convictions, is not totally free from legislative restrictions. * * * [L]egislative power over mere opinion is forbidden but it may reach people's actions when they are found to be in violation of important social duties or subversive of good order, even when the actions are demanded by one's religion. * * *"

Based upon the reasoning of the United States Supreme Court's interpretation of the First Amendment, several courts have recognized that, under certain restricted conditions, claims of religious exemption from law violation will be honored unless a substantial state interest will be frustrated in a significant manner. Annotation, 35 ALR3d 939 (1971), and cases there cited.

Other courts have held that constitutional freedom of religious practice is not a valid defense to a penal charge based on possession of a drug even if defendant possessed the drug solely for the practice of his bona fide religious beliefs. *See Leary v. United States,* 383 F2d 851 (5th Cir 1967), *rehearing denied,* 392 F2d 220 (1968), *rev'd on other grounds,* 395 US 6, 89 S Ct 1532, 23 L Ed 2d 57 (1969);[2] Annotation, *supra.*

---

[2] Sherbert v. Verner, 374 US 398, 83 S Ct 1790, 10 L Ed 2d 965 (1963), was cited as one of the grounds for reversal of the conviction of the defendant in Leary v. United States, 383 F2d 851 (5th Cir 1967), *rehearing denied* 392 F2d 220 (1968), *reversed on other grounds* 395 US 6, 89 S Ct 1532, 23 L Ed 2d 57 (1969). The United States Court of Appeals rejected Leary's argument, saying:

> "Appellant's reliance on Sherbert v. Verner * * * for authority that the constitutionally guaranteed right of free religious exercise imposes on the Government the burden

In determining when a compelling state interest justifies the substantial infringement of a person's First Amendment right, the United States Supreme Court in *Sherbert v. Verner,* 374 US 398, 406, 83 S Ct 1790, 10 L Ed 2d 965 (1963), said:

"* * * It is basic that no showing merely of a rational relationship to some colorable state interest would suffice; in this highly sensitive constitutional area, '[o]nly the gravest abuses, endangering paramount interests, give occasion for permissible limitation,' *Thomas v. Collins,* 323 US 516, 530. * * *" (Brackets theirs.)

In *City of Portland v. Thornton,* 174 Or 508, 149 P2d 972 *cert denied,* 323 US 770 (1944), the defendant was convicted for violating a city ordinance prohibiting the employment of boys and girls under certain ages in selling periodicals on the street. The defendant, a Jehovah's Witness and professed minister of the gospel, argued that the publication was being distributed as part of the practice of her religion, and that the ordinance unconstitutionally interfered with that practice. In upholding the validity of the ordinance, Mr. Justice Belt said that it has never been held that "* * * the practice of religion is beyond reasonable limitations." 174 Or at 513.

*Baer v. City of Bend et al,* 206 Or 221, 292 P2d 134 (1956), was an action to enjoin fluoridation of the city water supply. The circuit court sustained a demurrer and dismissed. The Supreme Court held that the fluoridation ordinance was not offensive to constitutional guarantees of religious liberty.

---

of showing a compelling interest in its abridgment, is misplaced and inapposite on the facts. * * *

"Here the paramount Government interest in the enforcement of the laws relative to marihuana is the protection of society. We cannot reasonably equate deliberate violation of federal marihuana laws with the refusal of an individual to work on her Sabbath Day * * *." 383 F2d at 860.

Justice Lusk, writing for the court, observed that liberties protected by the constitution may be subject to reasonable restraints imposed for the general welfare. He said:

"* * * 'The individual cannot be permitted, on religious grounds, to be the judge of his duty to obey the regulatory laws enacted by the State in the interests of the public welfare. The mere fact that such a claim of immunity is asserted because of religious convictions is not sufficient to establish its constitutional validity.' * * *" 206 Or at 229-30.

We hold that ORS 167.207 and 475.010(1)(b) under which defendant was arrested and convicted for knowingly and unlawfully possessing peyote (mescaline) are reasonable restraints imposed upon the conduct of individuals for the general protection of the citizens of the state. Defendant's contention that he should have the benefit of the religious freedom defense if he is able to show that peyote was possessed in connection with a bona fide practice of religious belief, that it was an integral part of a religious exercise, and that its use or possession was not dangerous to the public health, safety or morals, is in disregard of a positive legislative declaration. Peyote and mescaline have been declared by the legislature to be dangerous drugs as a matter of law. ORS 475.010(1)(b). The preservation of the health and safety of the people is the presumed purpose behind that legislative declaration and a valid and reasonable application of the criminal laws of the state. There is, thus, a compelling state interest.

Affirmed.

FORT, J., dissenting.

Defendant was indicted for and, following a jury trial in circuit court, convicted of criminal activity in drugs in violation of ORS 167.207. Imposition of sentence was thereupon suspended, and defendant was

placed on probation for a period not to exceed three years. On appeal, defendant contends that the trial court erred in refusing to allow him to introduce evidence of his religious beliefs, as by means of such evidence he could establish a defense to the crime charged on the basis of the constitutional guarantee of free exercise of religion.

On December 12, 1973, Deputy Sheriff Richard Fletcher stopped the car defendant was driving in Tualatin, Oregon, on the basis of previous information from a fellow officer that defendant did not have a driver's license. A computer check indicated that defendant's driver's license had been suspended. Deputy Fletcher thereupon arrested defendant and proceeded to search him. Among the items taken from defendant's person were two small pieces of brown vegetable material which the deputy suspected of being peyote. Subsequent laboratory tests revealed that the material contained the dangerous drug mescaline, which is found in small extracts of the peyote cactus known as peyote buttons.

At a pretrial conference, *the trial judge precluded the defendant,* during the course of the trial, *from presenting any evidence as to his religious beliefs.* Defendant's counsel then made the following offer of proof:

"* * * Were the defense allowed to present evidence in support of a religious defense it would present evidence that the Native American Church is a religious group recognized in several states, for instance it's incorporated in the state of California, has been recognized by the case law of the California Supreme Court, recognized by statute in Montana, specifically Montana statute 94-35-123 passed in 1955, recognized by statute in the state of New Mexico, New Mexico statute 54-5-16 passed in 1954. The defendant would present testimony

that the Native American Church religion has been practiced for centuries in the area which is now called the United States and presently has at least 20,000 members in the state of California alone. The defendant would also present evidence that the defendant is a practicing member of the Native American Church, has been for six years. Additional evidence would be presented showing that peyote is an integral part of the religious cermonies [sic] in the church and in fact it's the integral element in the church's most important religious cermonies [sic], further evidence would present—we would present evidence that the particular button involved in this case has a particular religious significance for the defendant and in fact is a symbol of his entire religious beliefs. It's sacred to him and carried only for its religious significance. Finally the defendant himself would testify as to his good faith belief in the practice of the Native American Church religion and his good faith practice of that religion."

For reasons discussed hereinafter, I believe, as defendant urges, that the trial court erred in refusing to hear evidence of his religious beliefs and practices and their relationship to his possession of peyote.

The First Amendment to the United States Constitution prohibits Congress from legislating "respecting an establishment of religion, or prohibiting the free exercise thereof * * *." *See also:* Oregon Constitution, Art. I, §§ 2-4; *Lowe v. City of Eugene,* 254 Or 518, 451 P2d 117, 459 P2d 222, 463 P2d 360 (1969), *cert denied* 397 US 1042, *appeal dismissed* 397 US 591 (1970); *City of Portland v. Thornton,* 174 Or 508, 149 P2d 972, *cert denied* 323 US 770 (1944).

The leading United States Supreme Court case establishing the limitations imposed on the criminal law by the Free Exercise Clause of the First Amendment is *Reynolds v. United States,* 98 US 145, 25 L Ed 244

(1878). In upholding an Act of Congress proscribing bigamy in United States territories against a claim that such law unconstitutionally infringed on the religious freedom of Mormons, the court applied the so-called secular regulation rule: The First Amendment protects religious beliefs and opinions, but not religious *acts* contravening generally applicable legislation. LaFave and Scott, Criminal Law 158, § 22 (hornbook series 1972).

Later, in *Cantwell v. Connecticut,* 310 US 296, 60 S Ct 900, 84 L Ed 1213, 120 ALR 1352 (1940), the court refined the rule by enunciating a balancing test with respect to the regulation of religious acts: The state may only regulate religious conduct in such a manner "as not, in attaining a permissible end, unduly to infringe the protected freedom." 310 US at 304.

Most recently, in *Sherbert v. Verner,* 374 US 398, 83 S Ct 1790, 10 L Ed 2d 965 (1963), the court indicated that a compelling state interest must be shown in order for a state law to constitutionally abridge the free exercise of religion. In holding that South Carolina could not apply the eligibility provisions of its workmen's compensation law so as to require a worker to accept Saturday employment in contravention of the teachings of her faith, the majority opinion declared:

"* * * [T]he Court has rejected challenges under the Free Exercise Clause to governmental regulation of certain overt acts prompted by religious beliefs or principles, for 'even when the action is in accord with one's religious convictions, [it] is not totally free from legislative restrictions.' *Braunfeld v. Brown,* 366 U.S. 599, 603. The conduct or actions so regulated have invariably posed some substantial threat to public safety, peace or order. See, *e.g., Reynolds v. United States,* 98 U.S. 145; *Jacobson v. Massachusetts,* 197 U.S. 11; *Prince v. Massachusetts,* 321 U.S. 158; *Cleveland v. United States,* 329 U.S. 14.

"* * * If, therefore, the decision of the South Carolina Supreme Court is to withstand appellant's constitutional challenge, it must be either because her disqualification as a beneficiary represents no infringement by the State of her constitutional rights of free exercise, or because any incidental burden on the free exercise of appellant's religion may be justified by a 'compelling state interest in the regulation of a subject within the State's constitutional power to regulate * * *.' *NAACP v. Button,* 371 U.S. 415, 438.

"* * * * *

"* * * It is basic that no showing merely of a rational relationship to some colorable state interest would suffice; in this highly sensitive constitutional area, '[o]nly the gravest abuses, endangering paramount interests, give occasion for permissible limitation,' *Thomas v. Collins,* 323 U.S. 516, 530. * * *" 374 US at 403, 406.

The assertion of the free exercise of religion as a defense to a prosecution for a narcotic or psychedelic drug offense has generally failed, *see* Annotation, 35 ALR3d 939 (1971), and cases collected therein. Although there is authority to the contrary, a majority of the few jurisdictions recently ruling on the matter have defined a carefully circumscribed exception for the use of peyote, separate from other narcotics, in connection with the bona fide practice of the religious belief of the Native American Church. *People v. Woody,* 61 Cal 2d 716, 40 Cal Rptr 69, 394 P2d 813 (1964); *In re Grady,* 61 Cal 2d 887, 39 Cal Rptr 912, 394 P2d 728 (1964).

The leading case is *People v. Woody, supra,* where the Supreme Court of California discussed at length the history and practices of the Native American Church and specifically the central position within that church as a religious symbol and its utilization in its practice and ceremonies of the peyote button. It con-

cluded *on the facts there put in evidence* that its use and possession as an integral part of the religious ceremony of the Native American Church was protected under the First Amendment and that a conviction for violation of the state's narcotic laws based on such use and possession could not stand.

In *State v. Whittingham*, 19 Ariz App 27, 504 P2d 950 (1973), *cert denied* 417 US 946 (1974), the court essentially reached the same result. There not only did the Supreme Court of Arizona deny the state's petition for review, but also the United States Supreme Court denied the state's petition for certiorari. In *Whittingham*, police officers arrested defendants at a Native American Church ceremony to bless two marriages, at which those present admittedly possessed and ingested peyote.

The Arizona Court of Appeals discussed and evaluated the First Amendment interests of defendants and the state as follows:

> "Perhaps the most cogent proof that the religion is a vibrant force today, and will most likely continue to be, is the fact that the federal government has recognized that Peyotism is a legitimate religious practice and has made an exception for the use of peyote in Peyotist ceremonies on reservations. At the present time several jurisdictions have, by legislative enactment or judicial decree, also permitted the use of peyote for sacramental purposes. It was also established that the use of peyote during a 'meeting' is a central force and the theological basis of Peyotism. Peyote constitutes, in and of itself, an object of worship. Without it the sacraments of the Native American Church are obliterated. Therefore, it seems apparent from the record that believers who worship at the Native American Church cannot freely exercise their religious beliefs absent the use of peyote.
> "* * * * *

"* * * In essence, the testimony does substantiate the State's contention that the excessive use of peyote might be attended by certain ill effects or damage to humans. However, we take judicial notice of the fact that many products are marketed universally and yet if ingested in unusually large amounts can be harmful, to wit, aspirin and alcohol. *The uncontroverted evidence on the record was that peyote is not a narcotic substance and is not habit-forming. The fact that the use of peyote will not result in addiction is crucial because the State would have a great interest in protecting its citizens from drug abuse.* Had the addictive qualities of peyote been proven, the State's interest would be stronger because of the possible burden upon our resources that an addict can become if the State is forced to assume the maintenance of this individual. Furthermore, the State failed to prove that the quantities of peyote used in the sacraments of the Native American Church are sufficiently harmful to the health and welfare of the participants so as to permit a legitimate intrusion under the State's police power." 19 Ariz App at 29, 30. (Emphasis supplied.)

The court, on the basis of a complete record, then determined whether the participants' adherence to the tenets of the Native American Church was genuine. Their beliefs were found to be bona fide.

The Arizona court summarized its holding as follows:

"* * * [I]n a prosecution for an alleged violation of A.R.S. § 36-1061 it is a defense to that prosecution to show that the peyote was being used in connection with a bona fide practice of a religious belief; that it was an integral part of the religious exercise; and that it was used in a manner not dangerous to the public health, safety or morals. See In re Grady, 61 Cal.2d 887, 39 Cal. Rptr. 912, 394 P.2d 728 (1964)." 19 Ariz App at 31.

In the case at bar we have the benefit of no record whatsoever insofar as the salient issues raised and decided in *Whittingham* and *Woody* are concerned. I therefore would remand for a new trial, at which both parties would be permitted to offer otherwise admissible testimony concerning defendant's religious beliefs, church affiliation and the practices thereof, if any, concerning the use and possession of peyote and the peyote button found in defendant's possession.

In its opinion the majority states:

"* * * Defendant's contention that he should have the benefit of the religious freedom defense if he is able to show that peyote was possessed in connection with a bona fide practice of religious belief, that it was an integral part of a religous exercise, and that its use or possession was not dangerous to the public health, safety or morals, is in disregard of a positive legislative declaration. Peyote and mescaline have been declared by the legislature to be dangerous drugs as a matter of law. ORS 475.010(1)(b). The preservation of the health and safety of the people is the presumed purpose behind that legislative declaration and a valid and reasonable application of the criminal laws of the state. There is, thus, a compelling state interest." 21 Or App at 798.

Thus, if I correctly understand, it holds in effect that once the legislature in the exercise of the police power determines that the use or possession by a person, no matter for what purpose, of anything it has determined under that power to be inimical to the public weal, such decision precludes any consideration of the religious freedom guarantees to the First Amendment to the United States Constitution or Oregon Constitution, Art I, §§ 2 and 3. Thus, if the legislature were to determine that alcohol in beverage form was a drug inimical to public health and forbade its use or possession under ORS 167.207, any person partak-

ing of sacramental wine as an integral and symbolic part of the religious practice of his church would be guilty of a felony. And more particularly, he could offer no evidence concerning his use or possession thereof in connection with his religion. Not only is such a result in my view clearly contrary to *Sherbert, Cantwell and Reynolds,* but it effectively nullifies the religious freedom guarantees, supra, of the federal and Oregon constitutions.

Accordingly, I respectfully dissent.