Argued and submitted October 31, 1984, resubmitted In Banc June 6, reversed and
remanded for reconsideration October 16, 1985

BLACK,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION et al,
*Respondents.*

(84-AB-161; CA A31186)

707 P2d 1274

David Morrison, Oregon Legal Services Corp., Roseburg, argued the cause and filed the brief for petitioner.

Jeffrey Bennett, Assistant Attorney General, Salem, argued the cause for respondent Employment Division. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Eldon F. Caley, Roseburg, filed the brief for respondent ADAPT.

ROSSMAN, J.

Buttler, J., dissenting.

**ROSSMAN, J.**

Claimant appeals an Employment Appeals Board order which disqualified him from receiving unemployment compensation.[1] Because EAB failed to consider claimant's principal argument, we reverse and remand for reconsideration.

Beginning in September, 1982, claimant was employed by a drug and alcohol treatment clinic as a resident assistant. He has a history of substance abuse but has been drug and alcohol free since early 1982. Employer's personnel rules provide that misuse or abuse of alcohol or other mind-altering substances may constitute grounds for suspension. Claimant signed a copy of those rules on his second day of employment. Employer contends it also was understood that, for recovering alcoholics and drug addicts, any use of drugs or alcohol was considered abuse. During the course of his employment, claimant was promoted twice, the last time to a counselor position in June, 1983.

Claimant is a member of the Native American Church and attends services weekly. At the hearing, he indicated that he first came in contact with the church through his job. He began attending regularly around March, 1983, approximately six months after he began working for employer. In September, 1983, as part of a Native American Church ceremony, claimant ingested a small amount of peyote, a cactus "button" containing the hallucinogen mescaline, which is illegal in Oregon. ORS 475.005. He took it for spiritual reasons, as a communion. There was testimony that the amount was too small to produce any hallucinogenic reaction. Before participating in the church ceremony, claimant consulted with friends and co-workers about the advisability of ingesting peyote, given his history of drug and alcohol abuse. Claimant testified that he was not *required* by the church to take peyote, but that it was a personal decision.

When employer learned of claimant's actions, he was asked to submit to an evaluation by a professional social worker, who recommended that claimant be placed in a

---

[1] At the outset, it should be noted that this proceeding does not challenge employer's decision to discharge claimant, only the state's denial of unemployment benefits.

residential care facility for an intensive program of personal counseling. Claimant refused to follow the recommendation because he disagreed with employer's opinion that his religious practices were a sign of relapse. Thereafter, he was terminated for intentional violation of employer rules.

Claimant's initial application for unemployment compensation was denied. Pursuant to his request, a hearing was held, and the referee allowed his application after concluding that claimant's use of peyote was an isolated instance of poor judgment. OAR 471-30-038(3). Employer requested review by EAB, which issued an order that denied benefits. The order provided:

"FINDINGS OF FACT. (1) The employer is a non-profit organization which engages in operating various programs for the treatment and prevention of alcohol and drug abuse. (2) The claimant was employed by this employer from June of 1983 until October of 1983 as a drug and alcoholism rehabilitation counsellor. (3) He was recovering from alcohol and drug addiction during this period of time, and had refrained from the use of alcohol and/or drugs.

"(4) The employer's rules and policies specify that employees will avoid substance abuse which involves alcohol and drugs. (5) Those policies and rules also provide for a suspension and termination if a staff member misuses alcoholic beverages and/or other mind altering drugs. (6) The claimant was aware of those employer rules.

"(7) On approximately September 10, 1983 the claimant attended a native American religious ceremony and ingested peyote as part of the ceremony. (8) Peyote is an illegal substance and the claimant was aware of its status. (9) The use of this drug during the ceremony was not required and was optional among the participants. (10) Prior to ingesting the drug the claimant spoke to others about the advisability of partaking in this portion of the ceremony. (11) After consulting with others, the claimant decided to ingest the drug. (12) He does not deny doing so.

"(13) When this came to the employer's attention he was asked to submit to an evaluation by a professional social worker. (14) He was placed on an indefinite mandatory sick leave and vacation beginning September 19 and did not work after that date. (15) On approximately October 3, 1983, the employer received the evaluation from the social worker

which recommended that the claimant be placed in a residential inpatient care facility for alcohol and drug abuse, or that he undergo an intensive program of personal counselling. (16) The claimant refused these options. (17) When the claimant refused these various treatment options he was terminated for violation fo the employer's rules as set out above.

"CONCLUSION AND REASONS: We disagree with the referee and find that the claimant was discharged for misconduct in connection with his work. The Administrative Rule cited by the referee sets out that misconduct is a wilful violation of the standards of behavior which an employer has the right to expect of an employee and is an act that amounts to a wilful disregard of the employer's interests.

"We find in the instant case that the claimant's actions constitute misconduct as defined above. He knew the employer's rules prohibited the use of drugs and alcohol and also recognized that he could be terminated if he violated those policies. Although the use of an illegal drug was optional during the religious ceremony, the claimant wilfully made the choice to ingest those drugs. He did so even after he was advised by others that such a choice would perhaps be incorrect or improper. Considering the seriousness of the claimant's conduct in violating the employer's rules we find the exculpatory provisions of the Rule cannot come into play."

Claimant argued before EAB, as he argues here, that his ingestion of peyote is a constitutionally protected religious act which cannot constitute the basis for disqualification. He presented evidence to support that argument. Nevertheless, EAB's "findings of fact" and "conclusions and reasons" are not sufficiently responsive to claimant's constitutional claims. The case must be remanded for reconsideration. *See Wasson v. AFSD,* 59 Or App 634, 640, 652 P2d 358 (1982); *Hillcrest Vineyard v. Bd. of Comm. Douglas Co.,* 45 Or App 285, 608 P2d 201 (1980). We turn now to a discussion of the nature of EAB's inquiry on remand.

## THE CONSTITUTIONAL QUESTION

The question in this case is whether the denial of unemployment compensation benefits based on claimant's use of peyote in a Native American Church ceremony is an unconstitutional intrusion on his right to free exercise of religion.

■ The initial responsibility for answering the question falls on claimant. Because he invokes the protection of Article I, sections 2 and 3, of the Oregon Constitution, and the Free Exercise Clause of the First Amendment to the United States Constitution,[2] he must establish that the act in question is a religious expression and that it is being substantially burdened by state law or action. If he establishes that, then the responsibility for resolving the question shifts to the state, which can only justify a burden placed on the religious expression by demonstrating that it is the least restrictive means of achieving a compelling state interest.[3] *Wisconsin v. Yoder,* 406 US 205, 92 S Ct 1526, 32 L Ed 2d 15 (1972); *Sherbert v. Verner,* 374 US 398, 403, 83 S Ct 1790, 10 L Ed 2d 965 (1963).

Thus, three separate and distinct issues emerge. Each must be addressed before the ultimate question in this case can be decided:

(1) Was claimant's ingestion of peyote a *religious act*?

(2) Was the denial of benefits a *substantial burden*?

(3) Has the state demonstrated that the denial of benefits serves a *compelling state interest* by the least restrictive means?

Because we are able to resolve the latter two issues on the record before us, without the necessity of remand, we will address them initially.

■ *First,* we hold that the denial of unemployment benefits constitutes a substantial burden. In *Sherbert v. Verner, supra,* a sabbatarian was discharged for refusing to work

---

[2] The Oregon constitutional provisions guarantee the right of persons to "worship * * * according to the dictates of their own consciences" and that "[n]o law shall in any case whatever control the free exercise, and enjoyment of religeous [sic] opinions, or interfere with the rights of conscience." The Free Exercise Clause of the First Amendment provides that "Congress shall make no law * * * prohibiting the free exercise" of religion.

[3] Although claimant relies on both the United States and Oregon Constitutions, he does not advance a principled argument based on the Oregon Constitution, nor does he suggest that it offers greater protection than the federal constitution. He supports his argument only with First Amendment principles. Accordingly, we refer only to those principles in discussing his claim.

on Saturday. Her refusal eventually resulted in her disqualification from unemployment benefits. The Supreme Court reversed the denial, holding that there was a significant coercive effect on the practice of religion, because the claimant was forced to choose between state benefits on the one hand and following her religious beliefs on the other. "Governmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against appellant for her Saturday worship." 374 US at 404. In *Thomas v. Review Bd., Ind. Empl. Sec. Div.,* 450 US 707, 101 S Ct 1425, 67 L Ed 2d 624 (1981), the *Sherbert* rationale was reiterated. There, a Jehovah's Witness was denied benefits after quitting his job, because it required him to work in the production of military weapons, which would have violated his religious beliefs. Under these abundantly clear and controlling authorities, it is beyond dispute that to deny someone unemployment benefits for engaging in *bona fide* religious conduct places a substantial burden on the exercise of his rights.

■         *Second,* we hold that the state has not demonstrated a compelling interest justifying the infringement. The only interest advanced by the state in this case is its

"* * *interest in protecting the Unemployment Compensation Fund from depletion by those who are undeserving due to their own conduct, e.g. those who quit or are fired without good reason."

That interest falls far short of compelling. In both *Thomas* and *Sherbert,* the integrity of the respective unemployment funds was advanced as compelling. The contentions were rejected in each instance. *Thomas v. Review Bd., Ind. Empl. Sec. Div., supra,* 450 US at 718-19; *Sherbert v. Verner, supra,* 374 US at 407.

We now come to the *third* and dispositive issue to be addressed: whether claimant's use of peyote was a *bona fide* religious practice deserving of constitutional protection. It is because of the need for further factfinding on this issue that we are remanding this case back to the Board.

To some, peyotism might seem unconventional. However, we cannot ignore a fundamental constitutional principle simply because the facts of the case surround an obscure church whose mode of worship may be controversial

and little understood. In *United States v. Ballard,* 322 US 78, 87, 64 S Ct 882, 88 L Ed 1148 (1944), the Supreme Court noted the breadth of First Amendment protections:

> "* * * The Fathers of the Constitution were not unaware of the varied and extreme views of religious sects, of the violence of disagreement among them, and of the lack of any one religious creed on which all men would agree. They fashioned a charter of government which envisaged the widest possible toleration of conflicting views. Man's relation to his God was made no concern of the state. He was granted the right to worship as he pleased and to answer to no man for the verity of his religious views. The religious views espoused by respondents might seem incredible, if not preposterous, to most people. But if those doctrines are subject to trial before a jury charged with finding their truth or falsity, then the same can be done with the religious beliefs of any sect. When the triers of fact undertake that task, they enter a forbidden domain. * * *"

■ The primary thrust of the state's contention, that the use of peyote is not a *bona fide* religious practice, centers on the fact that claimant's ingestion of peyote was not *required* by his church. Although there is authority to support a finding that the use of peyote is the "sine qua non" of the Native American Church, *see, e.g., People v. Woody,* 61 Cal2d 716, 721-22, 40 Cal Rptr 69, 394 P2d 813 (1964), the finding is unnecessary, because the constitution protects more than the "theological heart" of a religion. Were it otherwise, the state would be given a license to determine what is important to a religion and what is not.

In *Thomas v. Review Bd., Ind. Empl. Sec. Div., supra,* a claimant was denied unemployment benefits for quitting his job after he was reassigned to a position requiring him to work in the production of military weapons. The Supreme Court held that his refusal to produce weapons was a protected exercise of his religious freedom, even though other members of his church were willing to do so. 450 US at 715-16. The court stated that constitutional protections extend to conduct engaged in by less than all of the members of a faith; in other words, they extend to conduct that is not mandatory. The protection of the constitution does not depend on the theological importance of the disputed conduct. "Rather constitutional protection is triggered by the fact that it is

religious." *Unitarian Church West v. McConnell,* 337 F Supp 1252, 1257 (ED Wis 1972).

■      Furthermore, judicial examination of the validity or truth of religious beliefs is foreclosed by the First Amendment. The courts only may inquire into whether a claimant holds his beliefs in good faith or whether he seeks to wear the mantle of religious immunity merely as a cloak for illegal activities.[4] *United States v. Ballard, supra.* That is, the issue is whether a claimant's beliefs are sincerely held. When an employe's genuine exercise of religious beliefs clashes with an employer's interest, there is no basis for denial of benefits.

        Under these principles of law, it becomes EAB's task to determine whether this claimant's ingestion of peyote was a religious act. Before that conclusion can be made, EAB needs to make findings of fact that answer the following three questions:

        (1)    Is the ingestion of peyote a sacrament of the Native American Church?[5]

        (2)    Is this claimant a member of that church?[6]

        (3)    Concerning his use of peyote, were claimant's religious beliefs sincerely held?

If EAB resolves all three questions affirmatively, then it must conclude that claimant's ingestion of peyote was a religious act; and, if that is the conclusion, EAB cannot deny claimant unemployment benefits in this case.

---

[4] Some practices are so unusual that by their very nature they suggest that sincerely held underlying religious beliefs may be lacking. *See United States v. Kuch,* 288 F Supp 439 (D DC 1968), in which members of the Neo-American Church were charged with violation of laws concerning marijuana and LSD. The church called its members "Boo Hoos," its theme song was "Puff, the Magic Dragon," and its motto was "Victory over Horseshit." The district court rejected the constitutional claim and said that the group was formed merely to use and enjoy drugs.

[5] Although EAB must nevertheless make a finding of fact on this matter, in the record now before us no one argues that peyotism is not religious. References to it appear as early as 1560. The Native American Church has adherents in many parts of the United States and in Canada. Its membership has been estimated at up to 250,000. The theology of the church is based on many Christian tenets, as well as the belief that peyote embodies the Holy Spirit and that those who partake of peyote enter into direct contact with God. *See People v. Woody,* 61 Cal2d 716, 40 Cal Rptr 69, 394 P2d 813 (1964).

[6] It does not seem to be disputed that claimant was a member of the Native American Church.

## THE SOTO CASE

In 1975, this court refused to allow a criminal defendant, who was charged with criminal possession of peyote,[7] to present evidence of his religious beliefs as a defense. *State v. Soto,* 21 Or App 794, 537 P2d 142, *rev den* (1975), *cert den* 424 US 955 (1976).[8] The state argues that *Soto* controls this case. We do not believe that it does.

Despite a strongly worded dissent, the majority in *Soto* rejected the defendant's assertion and presumed a compelling state's interest in protecting the health and safety of the public from the fact that use and possession of peyote were illegal. 21 Or App at 798. Accordingly, we rejected defendant Soto's religious defense and allowed his conviction to stand.

■  Here, claimant was terminated for a violation of an employer rule prohibiting the use of drugs or alcohol by former abusers of those substances. The fact that there is an independent set of criminal laws which made his conduct coincidentally illegal is irrelevant, because he was not terminated for breaking the law. The question is not whether the state's action can be justified by the compelling interest of protecting the health and interest of the public. That justification is not advanced, nor could it be, because the relevant state action is not a criminal charge, as in *Soto,* but the denial of unemployment benefits. As noted above, the question is whether the state has a compelling interest in denying claimant's benefits because he violated a personnel rule. *Soto* did not address that question. Therefore, the holding in *Soto* is inapposite.[9]

---

[7] The defendant had been charged under *former* ORS 167.207 (*repealed by* Or Laws 1977, ch 745, § 54) and *former* ORS 475.5010(1)(b) (*repealed by* Or Laws 1977, ch 745, § 54).

[8] Although *State v. Soto,* 21 Or App 794, 537 P2d 142, *rev den* (1975), *cert den* 424 US 955 (1976), is consistent with some early cases like *State v. Big Sheep,* 75 Mont 219, 243 P 1067 (1926), it appears to be a distinct exception to the current trend in western states with significant Indian populations. In *Peyote Way Church of God, Inc. v. Smith,* 742 F2d 193 (5th Cir 1984); *State v. Whittingham,* 19 Ariz App 27, 504 P2d 950 (1973); *People v. Woody, supra* and *Whitehorn v. State,* 561 P2d 539 (Okla 1977), the defendants charged with criminal offenses involving peyote successfully raised religious freedom as a defense. Moreover, a number of jurisdictions have adopted exemptions to their drug control laws for sacramental use of peyote in *bona fide* religious ceremonies. *See, e.g.,* 21 USC § 812 (1970).

[9] Further, *Soto* predates the American Indian Religious Freedom Act, 42 USC § 1996. In the light of this federal legislative policy, the holding in *Soto* may bear reexamination.

Reversed and remanded for reconsideration.

**BUTTLER, J.,** dissenting.

Although I agree with the majority's discussion of a person's constitutional right to practice his religion, the question here is whether petitioner's ingestion of peyote, a controlled substance, is a protected practice just because it is a part of the ritual of the Native American Church to which he belongs.

The majority recognizes correctly that a religious practice, as opposed to beliefs, may be prohibited if the state has a compelling interest in doing so. In *State v. Soto,* 21 Or App 794, 537 P2d 142, *rev den* (1975), *cert den* 424 US 955 (1976), we held that the state has a compelling interest in prohibiting the use of peyote that outweighed the defendant's interest in practicing his religion as a member of the Native American Church. So long as *Soto* remains the law, plaintiff does not have a protectible constitutional right on which to base his claim.

The Oregon Supreme Court denied review in *State v. Soto, supra,* and the United States Supreme Court denied certiorari. If that decision is to be overruled, I do not think that this is the case in which to do so.

I would affirm the Board; therefore, I dissent.

Joseph, C. J., and Warden, J., join in this dissent.