Argued at Pendleton May 7, reversed July 31, 1928.

# STATE *v.* OLIVER FRANCIS.

(269 Pac. 878.)

254

For appellant there was a brief and oral arguments by *Mr. A. A. Smith* and *Mr. A. S. Grant*.

For respondent there was a brief and oral argument by *Mr. Frank C. McCulloch*.

ROSSMAN, J.—The defendant was convicted in the Circuit Court of the crime of failing to support his two children; one nine years of age, the other seven. He has appealed to this court.

In September, 1923, the mother of these children secured from the defendant a decree of divorce which awarded to her the custody of them, and ordered him

to contribute towards their support the sum of $37.50 per month. The defendant admits that since the divorce he has contributed nothing and that he has failed to visit them. At the time of the trial he was thirty-three years old, and in good health. He is a. graduate of a high school and has attended the State Agricultural College and a Polytechnic school. The witnesses describe the father as an intelligent man of good physique. July 12, 1924, he married again, and June 7, 1925, a child was born of this second marriage, which is living.

■ After the state had supplied evidence substantially to the above effect, except omitting the second marriage, it rested its case. The defendant thereupon moved for a directed verdict which the lower court denied; the defendant assigns this as error. Failure to support the children alone is not sufficient; to constitute the crime, the failure must be accompanied with circumstances that indicate it was without just or sufficient cause. See Or. L., § 2166, as amended by 1917 Session Laws, Chapter 311; 1 Or. L., Supp. 1921–1927, § 2166. In *State* v. *Dvoracek,* 140 Iowa, 268 (118 N. W. 399), the court in referring to the proof of those detailed facts which will justify a father in his failure to contribute toward the support of his children held, that "knowledge of such good cause ordinarily is peculiarly within the keeping of the accused in such a case, and all required in such behalf of the state is to make out a case from the which the absence of good cause is reasonably to be inferred." In *State* v. *Goins,* 122 S. C. 192 (115 S. E. 232), the court held that the trial court may properly exact of the defendant the first proof of those matters which will justify his failure after the

state has shown his failure and the distress of his family. We believe that it is unnecessary for us to go that far in the case before us.

■ The facts of this case, when the state rested, disclosed a young man in the prime of life, in good health, bright of intellect, well educated, somewhat proficient as a high school athlete, and yet this young man the evidence showed had contributed not a cent towards the support of his two children in three years of time; nor had he displayed enough interest in them to visit them, although he resided in the same city in which they resided, and although their mother had demanded support from him. Since ordinarily a young man so richly endowed by an indulgent nature is able to support in part at least his family, the court properly held that the evidence submitted by the state constituted a *prima facie* case.

■ The defendant contends that Section 2166 as amended by 1927 Session Laws, Chapter 311, being Section 2166, Or. Law, Supplement 1921 to 1927, which defines the crime of nonsupport, has no application to the father of a family who was separated from the mother by a decree of divorce. He contends that such a situation is entrusted solely to the divorce court. The section to which we have referred reads:

"Any person who, without just or sufficient cause, deserts or abandons his wife or who deserts or abandons his or her minor female child or children under the age of eighteen years or minor male child or children under the age of sixteen years, without providing necessary and proper shelter, food, care or clothing for her or any of them, or any person who without just or sufficient cause, shall fail or neglect to support his wife or minor female child or children under the age of eighteen years or minor male child

or children under the age of sixteen years, shall be deemed guilty of a felony and shall be punished therefor by confinement in the state prison for not more than one year or by imprisonment in the county jail for not more than one year. If any person leaves the state and shall fail, for the period of sixty days, to provide necessary and proper shelter, food, care, or clothing for his wife and/or his or her children who come within this law it shall be *prima facie* evidence that such person deserted or abandoned his said wife and/or his or her children.''

1921 Session Laws, Chapter 238 (see Or. L., Supp. 1921–1927, Chap. 993), provides: ''That it shall be no defense against a charge of nonsupport of a child or children that the father has contracted a subsequent marriage or marriages; or that issue has been born of such subsequent marriage or marriages, or that such person is the father of issue born of any prior marriage.'' Section 2167 provides that the court may accept a bond guaranteeing support of the children in lieu of sentencing the defendant to serve a penalty. We believe that it is apparent from the above that the legislature was not concerning itself solely with a husband who failed to discharge his duty towards his children. The act repeatedly uses the disjunctive word ''or'' so as to include a father who fails to support his children where father and mother are no longer husband and wife. The excerpt from 1921 Session Laws which we have quoted above clearly indicates that the legislature intended the act to include divorced husbands.

The defendant argues that a father who contributes nothing toward the support of his children may be brought before the court that granted the divorce for its attention, and that the latter court may fix the amount to be paid for the support of the chil-

dren; further, that it may subsequently punish the delinquent father for a contempt in the event the payment is not forthcoming. Proceeding with his argument, he asks us to draw the conclusion that, therefore, the divorce court is fully equipped to deal with the situation, and that there can exist no just reason for conferring a similar jurisdiction upon the criminal courts. In concluding he points out that if both courts may deal with the father, the latter might find himself confronted with a situation where the divorce court would fix one amount as the proper sum to be contributed, while the criminal court might select a different sum, and, that the individual could never be sure as to the precise contribution which would discharge his obligation.

Primarily the problem before us is one of statutory construction; for if the legislative enactment includes divorced fathers as well as those who remain married to the mother of their children, we are without authority to decree otherwise. In passing we may observe, that the penalty for a contempt is not as severe as for the crime of failure to support; the latter is an extraditable crime, while it is doubtful whether extradition would return a father who is charged with contempt. These are practical matters which are deserving of consideration when we approach the problem now before us.

Although the question whether disobedience of a decree which orders a father to pay alimony constitutes a contempt for which the equity court may penalize has never been presented to this court, yet many of the Circuit Court judges have so assumed, and have applied the appropriate remedies in those instances where their decrees have been disregarded.

This long observance of a general practice is persuasive.

■ It is true that in *Rostel* v. *Morat,* 19 Or. 181 (23 Pac. 900), this court said that a decree for the payment of money in probate proceedings cannot be enforced as for a contempt; as a premise for the conclusion thus announced the decision cites the second sentence of what is now Section 414, Or. L. But, the 1923 sessions of the legislature has since materially amended our laws so far as they pertain to the express matter now before us. 1923 Session Laws, Chapter 165, being 1 Oregon Law, Supplement 1921 to 1927, Section 670, provides that a "disobedience of any law, judgment, decree, order, or process of the court, including judgments, orders, and decrees for the payment of suit money, alimony and attorney's fees *pendente lite,* or by final decree, in suits for dissolution of marriages," is included within contempts for which the court may punish. Oregon Constitution, Article I, subdivision 19, provides: "There shall be no imprisonment for debt except in case of fraud or absconding debtors." The problem now presents itself, whether a sum fixed by a divorce court for the support of the children of a dissolved marriage constitutes a debt. If it does not then the foregoing constitutional inhibition would not deprive the court of power to punish when the delinquent father neglects to make his payment. In *Adams* v. *Adams,* 80 N. J. Eq. 175 (83 Atl. 190), it is held that a constitutional provision prohibiting imprisonment for debt does not prevent the court from penalizing for a contempt one who neglects to pay alimony. This case is reported and extensively annotated in Ann. Cas. 1913E, 1083, wherein the editor makes the

observation that the view expressed by the court "is in accord with the weight of authority, the authorities with few exceptions holding that general constitutional or statutory provisions against imprisonment for debt are not applicable to a case of imprisonment for failure to pay alimony, the theory usually.being that the imprisonment is a punishment for contempt in disobeying the order of the court, and not for the mere failure to pay the money decreed." A recent case to similar effect is *State* v. *Manley,* 197 Iowa, 46 (196 N. W. 724). In 19 C. J., Divorce, page 301, the writer states the rule thus:

"While there is authority to the contrary, the general and better rule is that alimony is not a 'debt' within the meaning of statutes or constitutions which prohibit imprisonment for debt. In some jurisdictions, while alimony itself is looked upon as a debt, yet, if the husband having the ability to do so refuses to pay alimony, he may be imprisoned, the imprisonment in such cases being for the contempt, and not for the debt."

In *United States* v. *Walsh,* 28 Fed. Cas. No. 16,635. Judge DEADY, District Judge at that time for this federal judicial district, concluded that the above section of the Oregon Constitution does not apply to an action for a tort or a penalty, but only to cases of debt arising upon contract, express or implied. In *Harlan* v. *Clow,* 110 Or. 261 (223 Pac. 541), and in *Re Application of Murphy,* 119 Or. 658 (250 Pac. 834, 49 A. L. R. 384), this court held that imprisonment for a failure to pay a fine is not in conflict with the above section of the Oregon Constitution. We conclude that imprisonment for disobedience of the decree declaring the payment of alimony or money for the support of children is not prohibited by the

foregoing section of the Oregon Constitution. Having come to this conclusion, which the defendant has earnestly contended for, we are brought to the problem as to whether the divorce court having jurisdiction to fix the amount to be paid for the support of the children and to penalize in the event it is not paid negatives the conception that the criminal courts may also deal with the defendant under the foregoing sections of our Code in the event he should fail to support his children.

■ We fail to understand why the defendant should not be subject to the criminal statute merely because he is also subject to the decrees of the divorce court. Certainly nothing in the criminal statute expressly excludes him. While the dual responsibility may seem to possess a potentiality to visit inconvenience and embarrassment upon the divorced father, yet we believe that this situation is not fraught with any real danger for a divorced father who seriously endeavors to discharge his duty. In fact it seems to us that if a father, who remains married to the mother of his children, must be placed under the surveillance of the criminal law, it would be a peculiar quirk of jurisprudence that would remove his neglect from criminal liability, when his wrongs against his wife had driven her to seek a divorce from him. If such is the law, then a derelict father by multiplying his domestic wrongs can lessen his criminal responsibility. Defendant relies upon the Washington decision in *State* v. *Coolidge,* 72 Wash. 42 (129 Pac. 1088). The facts in that case were apparently quite similar to those in our case; the court held that the defendant could not be prosecuted criminally. But it is well to notice that the prosecution introduced in

evidence the divorce decree as the basis of the criminal charge, and the trial judge treated the criminal proceeding as in aid of the divorce decree, for he made an order which, in effect, modified the decree. The court found that the policy of the state is to keep the solutions of the domestic affairs of the family in the divorce court. After reviewing some of its earlier decisions the court expressed itself to this effect: ''These authorities hold that after the separation or divorce, the common law obligation of the husband is not absolved, and the divorced wife can sue for contribution. But they do not hold, and we find no cases that do hold that when the duty of the father has been measured in money by a court of competent jurisdiction, with power to enforce its decrees, an independent action can be maintained against him, or that appellant may be coerced by a criminal proceeding. The remedy lies in the court of first jurisdiction, to which defendant is answerable, for by its orders he has become primarily liable to the court rather than to his former spouse.'' It made no mention of its earlier line of cases, *Hector* v. *Hector*, 51 Wash. 434 (99 Pac. 13); *Gibson* v. *Gibson*, 18 Wash. 489 (51 Pac. 1041, 40 L. R. A. 589); *Ditmar* v. *Ditmar*, 27 Wash. 13 (67 Pac. 353, 91 Am. St. Rep. 817), wherein it held that pursuant to the statute the expenses of the family and the education of the children are chargeable against both husband and wife and that, therefore, when the mother supports and maintains the children alone she may bring an action against the husband for contribution even though she is divorced from him by a decree which makes no provision for the support of the children. The principle of law expressed by the cases neces-

sarily takes the matter into other courts and even before juries.

The Washington court was clearly in error when it said, "We find no cases that do hold that when the duty of the father has been measured in money" by a divorce court a criminal action cannot be maintained, when he neglects the duty which the statutes enjoin upon him. Indeed, no case can be found which supports the Washington decision, while a number can be readily found holding that the criminal action can be maintained. We shall not review the earlier cases, but shall content ourselves with a few of the later adjudications. In *State* v. *Yocum,* 182 Ind. 478 (106 N. E. 705), the defendant's wife had secured a divorce from him prior to the present criminal action for nonsupport of his children. The decree ordered him to pay $7 a week toward the support of these children whose custody was awarded to the mother. The defendant's principal defense was to the effect that the mother should have resorted to the divorce court and not to the criminal court. The court disposed of this contention in the following words:

"Of course if an effort had been made to enforce the order of the Pulaski Circuit Court for the payment of $7 a week which it had ordered appellee to pay for the support of his children resort to the jurisdiction of that court would have been necessary. But that order has no influence in this prosecution other than that his utter failure to comply with it shows appellee's failure to discharge all his natural and legal obligations to his children. By this statute the State has created a sharper and more effective spear for a dull or dormant sense of parental duty than that which was before the instrument of a court of equity in a divorce proceeding. It was the duty

of appellee to support his infant children and the
fact that he has been deprived of their custody at the
instance of the wife cannot serve to relieve him of
that duty.''

To similar effect, see *State* v. *Miller*, 111 Kan. 231
(206 Pac. 744, 22 A. L. R. 788), which reviews *State*
v. *Coolidge* and refuses to follow it: *People* v. *Schlott*,
162 Cal. 347 (122 Pac. 846); *People* v. *Curry*, 69 Cal.
App. 501 (231 Pac. 358); *Watke* v. *State*, 166 Wis.
41 (163 N. W. 258); *White* v. *White*, 154 App. Div.
250 (138 N. Y. Supp. 1082); *State* v. *Vogt*, 141 La.
764 (75 South. 674).

In the following cases the divorced father's con-
viction was sustained on appeal although the court
did not mention the contention raised by this de-
fendant: *State* v. *Lewis*, 157 Minn. 250 (195 N. W.
901).

It has been frequently held that if a husband di-
vorced for his own fault neglects to support the
children awarded to the wife, she may recover from
him a reasonable sum for necessaries furnished for
the children's support: *Desch* v. *Desch*, 55 Colo. 79
(132 Pac. 60); *Hall* v. *Hall*, 141 Ga. 361 (80 S. E.
992); *Riggs* v. *Riggs*, 91 Kan. 593 (138 Pac. 628, Ann.
Cas. 1915D, 809); *LaRue* v. *Kempf*, 186 Mo. App.
57 (171 S. W. 588); *Evans* v. *Evans*, 125 Tenn. 112
(140 S. W. 745, Ann. Cas. 1913C, 294). See, also,
*State* v. *Seghers*, 124 La. 115 (49 South. 998). See,
also, the Washington cases previously cited. The
foregoing holdings are out of harmony with any con-
tention that the mother must resort to the divorce
court for relief.

We are well satisfied with the law as stated in
the above authorities. To hold that relief for a
neglected child can be won only through an amend-

ment to the divorce decree, or a contempt proceeding against the delinquent father is practically tantamount to holding that the child's welfare is entrusted by the state solely to the mother. In most instances the mother's love for her child would induce her to apply for relief in the divorce court before the child suffered. Nevertheless, it is for the best interest of all that the neglect of a father, whose failure to support his minor children is about to cause them to suffer or make them a public charge, should be a matter of public complaint and prosecution. This will not subject the father to any undue inconvenience, for as is suggested in *Watke* v. *State, supra,* "the duties of the defendant can be enforced separately by the different courts having jurisdiction thereof and he be fully protected in all his legal rights." We therefore conclude that the mere fact that the divorce court could amend the mother's decree and punish, if necessary for a contempt, did not deprive the state of authority to prosecute under its statutes. The criminal statute includes divorced fathers as well as those who remained married.

It follows from the foregoing conclusions that the court did not err when it denied the motion made by the defendant at the conclusion of the state's case for a directed verdict.

As a witness in his own behalf the defendant testified to the employments which he had followed, the business ventures he had engaged in, and the adversities that had overtaken him since his divorce. His duty to his children was "to do the best he can" to support them. *State* v. *Langford,* 90 Or. 251 (176 Pac. 197), or to put forth "a manly effort to support" them, as expressed in *Hunter* v. *State,* 10 Okl. Cr. 119

(134 Pac. 1134, Ann. Cas. 1916A, 612, L. R. A. 1915A, 564). This thirty-three year old young man, strong in limb, sound in wind and well educated, endeavored to convince the jury that he could not support his two minor children. He testified, it is true, to various employments and business ventures; but perhaps the jury did not believe that he made the necessary effort to find for himself remunerative employment. He was generally in the employ of his mother, and the latter entertained no cordial feeling to the mother of his children. At the time of the trial he was engaged in a business venture with his mother that had brought him neither profit nor wages; indeed, the obligations ahead in favor of his mother are so great, that unless he does far better in the future than in the past he will never receive any wages. Yet, this business is supporting a high-priced automobile which his present wife uses for her convenience. The court did not err when it denied this motion for a directed verdict.

We have carefully read the instructions given and those prepared by the defendant. Some of those given are more favorable to the defendant than he was entitled to, because the court ignored 1921 Session Laws, Chapter 159, *supra*. In other instances the court apparently regarded this case as a means of enforcing the decree requiring the defendant to pay the support money provided for in the divorce decree.

■■ The trial court charged the jury that the date mentioned in the indictment was immaterial "provided the act complained of was done within the period of three years prior to the date of the return of the indictment." Before any testimony was taken

the defendant moved the court that the state be required to select some particular date as the occasion for the offense. This motion was denied. The manner in which the case was presented to the jury enabled the twelve jurors to each select a different date, and each find him guilty upon his own personal date, without the concurrence of his eleven fellow-jurors. While during the three years' time the defendant never contributed anything to the support of his children, yet his condition varied; at one time he was confined for a short period in a sanitarium as a result of an accident which befell him; at another time he was under an indictment. It may be that upon these occasions or at some other times within the three-year period he was possessed of a justifiable reason for his failure to support his children. Under these circumstances the court should have required the state to select some occasion within the three-year period and charge the jury that the defendant's guilt or innocence was to be determined according to his status at that particular time. See *State* v. *Coss,* 53 Or. 462 (101 Pac. 193); *State* v. *Goddard,* 69 Or. 73 (133 Pac. 90, 138 Pac. 243, Ann. Cas. 1916A, 146). As we have indicated before, the Circuit Court received in evidence the decree of divorce which adjudged $37.50 as the amount of defendant's monthly contribution and thereafter seemed to treat the criminal case as ancillary to the divorce proceeding. This, we believe, was error. The criminal case was a complete, independent action; the defendant was entitled to a jury trial upon all of its constituent elements; as was said in *State* v. *Langford,* 90 Or. 251 (176 Pac. 197): "The decree of divorce was not *res adjudicata* as to the question of maintenance." In

*State* v. *Herring*, 200 Iowa, 1105 (205 N. W. 861), the court said: "He is not to be held criminally responsible merely because he did not pay the money into the hands of the clerk, nor because he did not make payments at the time or in the amount the decree provided. Criminal responsibility must be grounded on his wilful failure to support his child, not on his failure to comply with the terms of the decree."

■ In view of the fact that the judgment below must be reversed it is very fortunate that the mother's parents are sufficiently interested in defendant's children to be willing to care for them, and that their financial status permits them to do so. The generosity of others, however, constitutes no justification for this defendant's failure to do his duty. He, like all other fathers, must do the best he can to find some employment which will enable him to discharge the duty which he has now long postponed.

REVERSED.

RAND, C. J., and BEAN, J., concur.

COSHOW, J., concurs in result.