Argued December 2, 1968, reversed June 11, 1969

## STATE OF OREGON, *Respondent, v.*
## CLIFFORD GEORGE, Jr.,
*Appellant.*

455 P2d 609

*David R. Vandenberg, Jr.,* Klamath Falls, argued

the cause for appellant. With him on the briefs was Enver Bozgoz, Klamath Falls.

*Sam A. McKeen,* District Attorney, Klamath Falls, argued the cause for respondent. On the brief was James A. Sanderson, Deputy District Attorney, Klamath Falls.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

HOLMAN, J.

This is an appeal from a judgment of conviction of second degree murder because of the death of one Eggsman. Defendant had previously been tried for the first degree murder of one Kirk, and found not guilty. Both of the victims died as the result of the same altercation. It is defendant's principal contention that the state is collaterally estopped from convicting him of the death of Eggsman because of the manner in which the two men were killed and the prior adjudication of his non-responsibility for the death of Kirk.

Eggsman and Kirk were passengers in the rear seat of a two-door automobile driven by defendant. Eggsman was sitting behind the driver and Kirk was on the right-hand side. In the front seat with defendant were one Barber, who was sitting on the passenger's side, and defendant's girl friend, who was sitting between them. The evidence indicates that some sort of a controversy arose concerning remarks made by the persons in the rear seat about defendant's girl friend. As a result, defendant stopped the vehicle on the roadway and the three persons in the

front seat got out. Defendant and his girl friend used the door on the driver's side and Barber the door on the passenger's side. Immediately thereafter Eggsman and Kirk were both shot and killed while in the back seat.

It could be found from the evidence that three shots were fired, two from a .30-.30 caliber rifle and one from a .22 caliber rifle. Neither defendant nor Barber testified concerning the shooting. Defendant's girl friend testified in a manner which was consistent with Barber's having killed Eggsman. She was impeached by evidence that she had previously told others that defendant had killed Eggsman with the large rifle.

Both victims were killed by the large caliber rifle, although Kirk had a superficial wound in the abdomen inflicted by the smaller rifle. There was shattered glass in the back seat and the left rear window was missing, indicating that it had been shot out. The small caliber wound in Kirk's abdomen had a halo of powdered glass particles around it from which it could be inferred that the small rifle had been used from the driver's side. No such powdered glass was found in or around any other wounds.

The state produced as a witness a medical doctor, a specialist in pathology, who performed an autopsy on both victims and who was also qualified as an expert on ballistics and the wounding characteristics of bullets. In addition to performing the autopsy he also examined the clothing of both victims for bullet holes and the presence of powder and glass. The autopsies disclosed an entering wound the size of a bullet under the right shoulder blade of Kirk. The missile traveled diagonally across and upward through his body, com-

ing out through an approximate one-inch diameter hole in the middle portion of his left collar bone. There was an entering wound on Eggsman about four inches in diameter which was under the left cheek bone. The missile continued diagonally through his head toward its back, destroying a portion of the upper jaw. A bullet was found on the right side of the neck at the base of the skull which was fractured.

The witness testified that a .30-.30 caliber bullet fired into the head of Eggsman without its having been previously impeded would have gone right on through it and would not likely have been lodged in his neck. He expressed the opinion that window glass would not have been a sufficient impediment. No glass was found in Eggsman's wound. He also testified it was unlikely that a previously unimpeded and therefore undistorted bullet would have made an entering wound four inches in diameter. There was no evidence from which it could be found that the bullet which killed Eggsman could have previously hit anything other than the body of Kirk. From this and other evidence the witness expressed the opinion that both victims had probably been killed by the same bullet.

It is defendant's contention that he had previously been absolved of criminal responsibility for the firing of the shot that killed both men when he was found innocent of the murder of Kirk and that the state is thereby estopped from trying him for the murder of Eggsman.

■ The doctrine of collateral estoppel prevents the relitigation of an issue between the same parties. It is the subject of a statute, ORS 43.160, which provides as follows:

"That only is determined by a former judgment,

decree or order which appears upon its face to have been so determined or which was actually and necessarily included therein or necessary thereto."

The doctrine is somewhat similar to that of *res judicata,* but it is distinguishable. The distinction is made in *State of Oregon v. Dewey,* 206 Or 496, 504, 292 P2d 799 (1956). The court said:

"In its consideration of the subject this court, like others, has uniformly made a distinction between cases in which the second action is upon the same claim or demand as the first, and those in which it is upon a different claim or demand. In the former case the judgment, if upon the merits, is an absolute bar and concludes the parties and their privies not only as to every matter that was actually litigated but as to any other matter that might have been litigated. But in the latter case it is essential that the issue in the second action was a material issue in the first and necessarily determined therein  *  *  *."

The same case also defines the breadth of the doctrine of collateral estoppel by quoting from 2 Freeman on Judgments (5th ed) 1465, § 693 as follows:

" 'Matters which follow by necessary and inevitable inference from an adjudication because the judgment could not have been rendered without determining them are as effectually concluded thereby as though specifically and in terms adjudicated.' "

■■ This action is not upon the same claim or demand as that which was litigated in the case in which defendant was tried for the murder of Kirk. Therefore, before defendant's acquittal for the murder of Kirk will prevent his subsequent conviction of Eggsman's murder in the present case, it must be determined that both men must have been killed by the same shot and that all criminal responsibility for firing it

in relation to both victims must have been necessarily adjudicated and decided in defendant's favor in the Kirk case. A determination of whether this situation exists necessitates an examination of the evidence and instructions in the first case as well as the evidence in the present one. We have before us the records in both cases. The evidence in both is substantially the same except for the impeachment of defendant's girl friend which occurred only in the second case.

■ The record in the present case must first be examined to determine if the evidence necessitates a finding that both victims were killed by the same shot. We find that it does. The jury could have found that there were two shots fired by the .30-.30 caliber rifle. However, we believe that there was no basis for finding that two *fatal* shots were fired in the face of the uncontradicted physical facts disclosed by the state's expert. The only evidence from which it could be remotely contended that two fatal shots were fired was the testimony of defendant's girl friend on cross-examination by defendant's lawyer. In effect, she said that she previously testified in the first trial that she saw Kirk attempt to get out of the automobile after Eggsman was shot and that the testimony was true. It could be argued that this raises the inference that at that time Kirk had not yet been shot or he would not have been able to try to get out of the car. The evidence indicated Kirk would have lived two to five heartbeats after being shot. We believe an inference that the victims were killed by separate shots cannot be drawn from this evidence in the face of the uncontradicted physical facts offered by the state concerning the nature of the victims' wounds and the surrounding circumstances which are consistent only with both men having been killed by one bullet.

The state argues that the jury does not have to accept the opinion of the expert that one bullet killed both men. This is true, provided there is evidence to sustain an alternative theory. In view of the uncontradicted factual evidence concerning the surrounding physical circumstances and the nature of the wounds from which he formed his opinion, we hold that only one conclusion could be drawn from the facts.

■■ The instructions in the first case show that it was necessarily determined there that defendant was not criminally responsible for firing the bullet which caused the death of Kirk as the result of either Barber's or his own actions. The instructions covered both a direct killing by him and aiding and abetting Barber in the killing. The state contends there was an error in the aiding and abetting instruction and therefore the issue of whether defendant aided and abetted Barber was not adequately presented to the jury. Presuming but not deciding that the instruction was deficient, nevertheless, the issue was presented to and was necessarily determined by the jury in defendant's favor in the first proceeding in which both parties to this litigation participated. The state is, therefore, estopped to contend otherwise now.

The instructions in the first case also covered the situation where it was defendant's intent to kill Eggsman and the death of Kirk resulted. The jury was given an instruction which required them to find defendant responsible for Kirk's death under such circumstances. The jury was instructed as follows:

"Any person who in the commission of an unlawful act * * *, involuntarily kills another is guilty of involuntary manslaughter."

Shooting with intent to kill Eggsman would have been

an unlawful act. If it inadvertently resulted in Kirk's death the jury would have had to find him criminally responsible. It did not.

■ The instructions and the fact that both men were killed with one shot force us to the conclusion that the issue of whether the bullet was caused to be fired by defendant in a manner to make him criminally responsible for Eggsman's death was necessarily decided in the negative in the first case or he could not have been absolved of criminal responsibility for the death of Kirk.

■ The basis for this decision is not former jeopardy which applies only when the prosecution in both cases is for the same offense. The courts are not in agreement whether the killing of two persons by the same wrongful act constitutes a single offense. 172 ALR 1053, 1062; 40 Am Jur2d 471, Homicide § 188. This court does not appear to have passed on the question. Compare *State v. McDonald,* 231 Or 48, 365 P2d 494 (1962).

■ For present purposes, it may be assumed that the killing of Kirk and the killing of Eggsman, albeit by the same bullet, were separate offenses, and, therefore, that the case is not governed by the constitutional provision against double jeopardy. Oregon Constitution, Art I, § 12. Nevertheless, "[T]he conclusiveness of a fact which has been competently adjudicated by a criminal trial is not confined to such matter only as is sufficient to support a plea of double jeopardy." *United States v. DeAngelo,* 138 F2d 466, 468 (3d Cir 1943). We recognized this rule in *State v. Dewey, supra,* where we applied to a criminal case the doctrine of collateral estoppel.

Because of the view we take of the above assignment of error, it is unnecessary to consider any other.

The judgment of the trial court is reversed and the defendant is discharged from custody.