Argued April 20, affirmed June 14, reconsideration denied July 21, petition for review denied September 1, 1976

# STATE OF OREGON, *Respondent,*
## *v.*
# MICHAEL BRUCE SPRAGUE, *Appellant.*
## (No. 75-3109, CA 5295)

550 P2d 769

*Paul J. DeMuniz,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Janet A. Metcalf,* Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

## LANGTRY, J.

Defendant appeals from conviction by jury and judgment on an indictment charging him with "on or about the 17th day of June, 1975 * * *" unlawfully and without lawful excuse refusing and neglecting to provide support for his two children for more than 60 days. ORS 163.555. He had previously been charged with the same offense in another indictment which had been returned during 1974 and which alleged failure to support on April 9, 1974.

The trial on the former indictment was in May 1975 and resulted in a not guilty verdict on May 30, 1975. The second indictment was dated June 24, 1975. Thus, the 60 days preceding June 17, 1975, which was elected by the prosecutor as the time of the violation at bar necessarily included some 43 days of time preceding the trial which was concluded on May 30, 1975. It is conceded that defendant has not for several years paid any support for the two children involved. As an excuse therefor, apparently in the former trial and certainly in this trial, he contended that he belongs to a religion which is described as Tibetian Tantric Yoga and requires the practice of physical aspects of yoga twice a day for an hour to an hour-and-one-half a session and otherwise requires the follower thereof to engage only in activities like community service and healing from which he gets virtually no remuneration. Thus, he says he has no opportunity to engage in work for pay unless it comes incidental to the practice of his religion, and it does not, and consequently there is no prospect of his supporting his children.

On appeal defendant contends (1) that prosecution of him on the second indictment constituted placing him in double jeopardy; also (2) that it was error for the court to instruct that the practice of his religion was not an excuse for his violating the statute requiring him to support his children, since this is a violation of his First Amendment right to the free practice of religion.

■ In *State v. Combs,* 3 Or App 260, 473 P2d 672 (1970), where the prosecution was for failure to support a child under ORS 167.605 (which was repealed in 1971 by Oregon Laws 1971, ch 743, § 432 and replaced by ORS 163.555) we held "that the precise time at which the crime was committed need not be stated in the indictment * * *" (3 Or App at 262) unless the statement of time is necessary to prevent prejudice to the defendant, citing *State v. Howard,* 214 Or 611, 331 P2d 1116 (1958). We also noted in *Combs* that the failure to support under the terms of ORS 167.605 must continue for 60 days. When the new statute, ORS 163.555, was adopted mention of the 60-day provision was dropped. ORS 163.555(1) provides only that "[a] person commits the crime of criminal nonsupport if, being the parent * * * he refuses or neglects without lawful excuse to provide support for such child." Apparently, some district attorneys have continued to specify or elect a 60-day period as they had done under the former statute. This may be because in *State v. Francis,* 126 Or 253, 267, 269 P 878 (1928), it is said the state is required to select some occasion within the period, and defendant's guilt is to be determined "according to his status at that particular time * * *." However, allegation of a 60-day period is not necessary under ORS 163.555.

In the Commentary to the Oregon Criminal Code 177, § 175 (1971), the Criminal Law Revision Commission noted that this new version of the statute was taken from NY Penal Code § 260.05. Reference to NY Penal Code § 260.05 discloses that the wording of that section in 1970 was exactly the same as the part of ORS 163.555 which we have quoted above, except that at the very end it had the additional words "when he is able to do so." The Commentary to this section in NY Penal Code § 260.05 (McKinney 1967) states that:

> "A parent is 'able' to provide support within the meaning of § 260.05 only when he possesses the financial resources to do so. [Cf. Social Welfare Law § 101(1): a parent is responsible for the support of his minor child, a

recipient of public assistance, only if the parent is 'of sufficient ability.' The term 'sufficient ability' has been held to mean sufficient *financial* ability. *In re Claiborn's Estate,* 1944, 51 N.Y.S.2d 543; *Whalen v. Downs,* 1960, 10 A.D.2d 148]. If he is without assets and is unemployed, he cannot be convicted of the crime of non-support of a child. And it matters not that his unemployment is by choice or unavoidable circumstances. Section 260.05 is not designed to punish a destitute parent who fails or refuses to seek remunerative employment that will provide sufficient support for his minor child * * *." (Brackets theirs.)

The annotation to the NY Penal Code discloses that § 260.05 was amended in 1972 by adding the words "or becomes unable to do so, when, though employable, he voluntarily terminates his employment, voluntarily reduces his earning capacity or fails to diligently seek employment." The explanation in the Commentary states that the expansion of the definition of criminal nonsupport was in aid of efforts to obtain child support from defaulting parents, noting that unemployed parents, lacking other assets, had been relieved by the courts under the existing statute of the support obligation without regard to the reason for unemployment.

This review of the history of the pertinent parts of present ORS 163.555 avails us little in determining the question raised by this appeal. In 1971, by leaving the words "when he is able to do so" off the Oregon version of the New York statute, the Oregon Legislature implied roughly the same result in a case like this that the New York Legislature enacted by its amendments in 1972.

■ (1) We do not perceive the second prosecution as falling within the constitutional prohibition against double jeopardy. U.S. Constitution, Fifth Amendment; Oregon Constitution, Art I, § 12. We said in *State v. Combs,* supra, that the prosecution could choose any time within the three-year statute of limitations for its proof of the crime, regardless of the date stated in the indictment, so long as the defendant was not pre-

judiced in making his defense thereby. He is in jeopardy only as to that time. *State v. Francis,* supra. At bar, the prosecution clearly announced before trial that the time it elected to prove was the 60 days preceding the date alleged in the indictment. This was in 1975. The 60 days for which defendant was acquitted in the former trial was 60 days preceding April 9 in 1974. Regardless of the fact, which it apparently was, that defendant continued not to pay child support, the different times involved constituted different crimes if the proof was sufficient. One was not the same act or transaction as the other, nor was the second wholly known or ascertainable to the prosecutor at the time the first was tried.

Although double jeopardy does not attach, we perceive that collateral estoppel might very well attach if there were a complete record of the cases involved before us. In *State v. George,* 253 Or 458, 455 P2d 609 (1969), defendant was prosecuted for and acquitted of murder of one man. It appeared from the evidence that the bullet that killed that man went through him and entered and killed another. Defendant was secondly indicted for murder of the second man. On appeal from conviction of the second charge the Oregon Supreme Court held that the doctrine of collateral estoppel should have prevented the second prosecution.[1]

---

[1] "The doctrine of collateral estoppel prevents the relitigation of an issue between the same parties. It is the subject of a statute, ORS 43.160, which provides as follows:

" 'That only is determined by a former judgment, decree or order which appears upon its face to have been so determined or which was actually and necessarily included therein or necessary thereto.'

The doctrine is somewhat similar to that of *res judicata,* but it is distinguishable. The distinction is made in *State of Oregon v. Dewey,* 206 Or 496, 504, 292 P2d 799 (1956). The court said:

" 'In its consideration of the subject this court, like others, has uniformly made a distinction between cases in which the second action is upon the same claim or demand as the first, and those in which it is upon a different claim or demand. In the former case the judgment, if upon the merits, is an absolute bar and concludes the parties and their privies not only as to every matter that was actually litigated but as to any other matter that might have been litigated. But in the latter case

As in *George,* the defendant at bar might successfully assert that the jury heard exactly the same defense (the freedom-of-religion defense) in the 1974 case as in the 1975 case and necessarily determined that the defense was "a lawful excuse" (ORS 163.555) for the failure to support. Of course, until the defense was heard in the second case, it would not be known whether at the time elected for the second the defendant still embraced and practiced the same religion.

Be that as it may, in *George* the report of the decision indicates the appellate court had the record of the first case, and a transcript of the evidence and instructions therein, to which it referred in making its decision. We have no such record or transcript here inasmuch as it was not made a part of this record; hence, we cannot make the decision. *See State v. Hoare,* 20 Or App 439, 532 P2d 240 (1975).

■ (2) Under this claim of error, defendant mixes a claim that the court erred in instructing the jury "that the practice of one's religion is not a lawful excuse to the crime of criminal non-support" with another, namely, that it was error not to allow defendant to introduce evidence about his religious beliefs and practices. It is true that the court, in colloquy with counsel before the defense put on its case, indicated that it might accede to the prosecution's request that such evidence (similar to that presented in the first case) be excluded. But the judge then said he would not rule in a "vacuum" and that when the evidence was

---

it is essential that the issue in the second action was a material issue in the first and necessarily determined therein * * *.'

"The same case also defines the breadth of the doctrine of collateral estoppel by quoting from 2 Freeman on Judgments (5th ed) 1465, § 693 as follows:

" ' "Matters which follow by necessary and inevitable inference from an adjudication because the judgment could not have been rendered without determining them are as effectually concluded thereby as though specifically and in terms adjudicated." ' " *State v. George,* 253 Or 458, 462-63, 455 P2d 609 (1969).

offered the prosecution should "be quick on your feet." This is shown on page 31 of the transcript. The next 90 pages of transcript (three-quarters of all of it) is almost solid testimony by defendant and his witnesses on the religion defense, with no material objection being made. Obviously, there was no such ruling which prejudiced the defense.

With reference to the instruction, quoted supra, it was combined with others that copiously defined and explained the crime. Among them was "the phrase 'without lawful excuse' is not defined by the law and is left for you, the jury, to apply to the particular facts of the case."

In *State v. Soto,* 21 Or App 794, 795, 537 P2d 142, Sup Ct *review denied* (1975), *cert denied* 424 US 955 (1976), we reviewed in detail the applicable cases which have established the principle of the "two-pronged concept of the First Amendment" which

" '* * * embraces two concepts, —freedom to believe and freedom to act. The first is absolute but,- in the nature of things, the second cannot be. * * *' " Quoting from *Cantwell v. Connecticut,* 310 US 296, 303-04, 60 S Ct 900, 84 L Ed 1213, 128 ALR 1352 (1940).

We think it unnecessary here to review the precedents again.

■  It is of compelling interest to the state that parents of children, when they are able, should be required by law under penalty of criminal law sanctions to support their children, and that their *actions* in such regard should be governed by such laws, regardless of their religious *beliefs.*

Affirmed.

**SCHWAB, C. J.,** specially concurring.

Defendant contends that a criminal nonsupport prosecution for any period prior to May 30, 1975, the date of defendant's first nonsupport trial, is barred on

[ 628 ]

the grounds of former jeopardy. ORS 131.515(2) sets out a three-part test establishing a statutory former jeopardy rule:

> "No person shall be separately prosecuted for two or more offenses [1] based upon the same criminal episode, [2] if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and [3] establish proper venue in a single court."

*Accord, State v. Brown,* 262 Or 442, 497 P2d 1191 (1972). Since there is no question here regarding the third element, only the first two must be considered.

In *State v. Boyd,* 271 Or 558, 565-66, 533 P2d 795 (1975), the Oregon Supreme Court held that "same criminal episode" is synonymous with "same transaction." *Boyd* defined these terms as follows:

> " 'We hold that the two charges arise out of the same act or transaction if they are so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge.' " (Quoting from *State v. Fitzgerald,* 267 Or 266, 273, 516 P2d 1280 (1973).)

The majority simply states that "* * * [o]ne [charge of criminal nonsupport] was not the same act or transaction as the other * * *." I cannot agree. In *Boyd* the court observed that it was difficult to apply the "same transaction" definition to the facts there since the crimes charged constituted a single condition—possession—rather than relatable events. The court then continued:

> "The criminal code treats the fact of possession as a criminal act of a continuing nature. In this statutory sense, the possession of the television set and the drugs, existing at the same place and time, constitute a single occurrence. Once unlawful possession of goods, without more, is recognized as criminal conduct, there is no reason for fragmenting the criminal conduct into as many parts as there are different items of property, however acquired. If a defendant is charged with the possession of drugs, some of which had been acquired at one time and the rest at another time, it would seem

clear that he would be entitled to object to multiple prosecutions. There would be no reason other than harassment of the defendant for the state to divide the condition of possession into parts and prosecute separately on each * * *." 271 Or at 570-71.

The same inherent difficulty arises here where we are dealing with the crime of nonsupport which is also an act of a continuing nature.[1] There is no reason to allow the state to fragment the criminal conduct into separate days, or separate sixty-day periods, and *prosecute* each separately. This is not to say that the state cannot make multiple *charges* and then move to consolidate before trial as suggested in *State v. Bishop,* 16 Or App 310, 314, 518 P2d 177 (1974).

Because of my conclusion as to the remaining element of the former jeopardy rule—prosecutorial knowledge—I reach the same result as the majority. Even if several offenses are part of the same criminal episode, for the government to be barred from trying them separately the offenses must be "reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution." ORS 131.515(2). The issue then is whether or not the prosecutor in the first trial had knowledge of the offense that occurred before the first triah for which defendant was later charged, tried and convicted.[2] This court addressed the same issue in *State v. Hammang,* 19 Or App 265, 527 P2d 137 (1974), *aff'd* 271 Or 749, 534 P2d 501 (1975):

"How is this 'knowledge' question to be resolved? The

---

[1] *E.g.,* in In Re Perdiak's Petition, 162 F Supp 76, 77-8 (SD Cal 1958), the court stated:

"* * * Wilful failure by a parent to provide for a minor child is a continuing offense and the immorality inherent in it continues until provision is commenced to be made * * *."

[2] The majority opinion notes the overlap in time between the second indictment and the first trial. Furthermore, at the second trial, the court instructed:

"In order to establish the crime of criminal nonsupport, it is necessary for the state to prove * * * that between the dates of April 17th and June 17th, 1975, the defendant did knowingly and unlawfully refuse and neglect to provide support for such children * * *."

[ 630 ]

other two aspects of the *Brown* formula [and ORS 131.515(2)]—same act or transaction and venue—are obviously questions of law. By contrast, the question of knowledge is one of fact. Being a question of fact initially passed upon by the trial court, it follows that the trial court must, if there is any factual dispute, hold an evidentiary hearing to determine the facts. And once the trial court has determined the factual question of prosecutorial knowledge, its finding should be subject to only limited review in this court under the doctrine of *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).

"In this case, however, during the argument of defendant's motion to dismiss, both the prosecutor and defense counsel, without being sworn as witnesses, made factual representations to the trial court. This procedure obviously cannot always substitute for a full evidentiary hearing to determine the relevant facts. But since no party in the trial court or on appeal has objected to this procedure, and since there is no conflict in the representations of fact made to the trial court, we proceed to the merits on the record made." 19 Or App at 268-69.

At the hearing on the motion to dismiss in this case, there was no evidence offered by the defendant on the issue of prosecutorial knowledge of periods other than the one for which defendant was charged in the first trial. The only statement of relevance was one made by defense counsel during argument. He stated: "* * * [W]e must, I think, assume that the district attorney has access to that support—that computer print-out support ledger, so they do have—or they should have had knowledge of his support record * * *." This was not a factual representation; it was counsel's opinion. Furthermore, the district attorney did not make a similar statement. Therefore, the circuit court did not err in denying defendant's motion to dismiss because of former jeopardy.

If the trial court had determined that there was prosecutorial knowledge of the second offense before the first trial, then dismissal would have been required here. Therefore, I cannot agree with the statement by the majority that the defendant was in

jeopardy only as to the time period charged in the first indictment.

**THORNTON, J.,** specially concurring.

I concur in the result but do not agree with the statement that there was a 43-day overlap in the time frames involved in the two indictments. If I understand the facts here and the rule announced in *State v. Combs,* 3 Or App 260, 473 P2d 672 (1970), correctly, there was no overlap, and consequently no double jeopardy.

Secondly, I would not agree with the suggestion in the specially concurring opinion that the "same transaction" rule applies. In my view, so long as the new charge does not cover the period of nonsupport for which the defendant was tried and acquitted, the state is not precluded from bringing the new charge notwithstanding the acquittal.