Argued and submitted May 23, affirmed October 24, 1984

## STATE OF OREGON,
*Appellant,*

*v.*

## CHARLIE C. JOHNSON,
*Respondent.*

(10-82-04090; CA A30390)

689 P2d 1032

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General.

James W. Spickerman, Eugene, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

**WARDEN, J.**

This is a state's appeal from the dismissal of a charge of driving while under the influence of intoxicants (DUII). We affirm.

Defendant was charged by a single indictment with the crimes of driving while suspended or revoked (DWS), ORS 487.560, and driving while under the influence of intoxicants, ORS 487.540. The two crimes were alleged to have occurred during the same act or transaction. The state did not contest defendant's motion to sever the two counts for trial, and the trial court granted the motion. The parties then proceeded to trial on the DWS charge, and the jury returned a verdict of not guilty. Defendant moved to dismiss the DUII count on the ground that the state was collaterally estopped from attempting to prove a second time that defendant was operating a motor vehicle at the time in question. The trial court granted the motion, and the state appeals.

Collateral estoppel prevents relitigation of a material issue that was finally and necessarily determined in an earlier proceeding. The doctrine applies in criminal as well as civil cases. *State v. Dewey,* 206 Or 496, 504, 292 P2d 799 (1956); *State v. Hollandsworth,* 64 Or App 44, 46, 666 P2d 1373 (1983); *see* ORS 136.430. Its statutory basis is ORS 43.160:

> "That only is determined by a former judgment, decree or order which appears upon its face to have been so determined or which was actually and necessarily included therein or necessary thereto."

At defendant's trial for DWS, the material issues were whether he was driving at the time in question and whether his driver's license was suspended or revoked. The state's first argument is that, because there was no stipulation in the DWS trial restricting the jury's consideration to the issue of driving and because there was some evidence tending to cast doubt on defendant's knowledge of the status of his license, it cannot be said that the factual issue of driving was finally and necessarily determined by the jury verdict in the DWS trial and resulting judgment of acquittal.

Preliminarily, we reject the suggestion that collateral estoppel applies only where the parties in the earlier trial have

stipulated that a single factual issue would be submitted to the trier of fact. Although it is more obviously applicable in such a situation, *see State v. Hollandsworth, supra,* 64 Or App at 46-47, its application is not restricted to that situation. It serves to grant finality only to material issues or determinative facts actually or necessarily determined in an earlier case, but whether they have been may be determined by examining the evidence and instructions in the earlier case where a general verdict was returned and, when a second trial has occurred, the evidence in the second case.[1] *State v. George,* 253 Or 458, 455 P2d 609 (1969); *State v. Hoare,* 20 Or App 439, 447-48, 532 P2d 240 (1975).

We turn, therefore, to a consideration of the record. Before defendant's acquittal of DWS will serve to collaterally estop his prosecution for DUII, it must be determined that the issue of who was driving was necessarily adjudicated and decided in defendant's favor in the DWS case. The record discloses that the state offered testimony of two police officers that they observed defendant driving a vehicle at the time in question. Defendant controverted that evidence with the testimony of Theodore Harvey, the other occupant of the vehicle. Harvey testified that he, not defendant, had been driving, and that, because at the time it would have been a

---

[1] That standard comports with the function of the doctrine as described by the United States Supreme Court in *Ashe v. Swenson,* 397 US 436, 443-44, 90 S Ct 1189, 25 L Ed 2d 469 (1970):

"The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' *Sealfon v. United States,* 332 US 575, 68 S Ct 237, 579, 92 L Ed 180, 184. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal." (Footnotes omitted.)

Although *Ashe v. Swenson, supra,* held that that standard is embodied in the Fifth Amendment guarantee against double jeopardy, and is therefore applicable to the states through the Fourteenth Amendment, we apply collateral estoppel as a matter of state statute and decisional law. *Accord, State v. Hollandsworth, supra,* 64 Or App at 47 n 4.

violation of his probation to be driving, he had requested defendant to change places with him before the officer approached and that defendant had complied with his request. The state introduced three orders of revocation issued by the Motor Vehicles Division as evidence that defendant's driver's license was revoked. They were admitted without objection from defendant and went to the jury during its deliberations. The state also adduced through testimony of defendant's employer that he had signed for two of the orders for defendant, and because defendant was uneducated and illiterate, he had read them to him and explained to him that he should not drive and that, if he did, he could be arrested. The employer further testified that he did not think defendant understood the law. That evidence was uncontroverted; defendant adduced *no* evidence on the issue of the status of his license or his knowledge of it.

The court gave the following instructions:

"As I have indicated now, the Defendant in this case is charged with driving while revoked or suspended. So to establish that offense, the State must prove beyond a reasonable doubt each of the material allegations, and these are as follows:

"First, the State must prove the Defendant drove a motor vehicle on a highway in Lane County, Oregon.

"Second, they must prove that the offense was committed on or about the 28th day of March, 1982.

"Third, they must prove that while driving a motor vehicle, the Defendant's license to drive and his right to apply for a license was suspended or revoked by the Motor Vehicle Division of the State of Oregon."

There is no dispute that the issue of who was driving was material, and that it was fully litigated. The state argues, however, that the testimony about defendant's notification of the revocation of his license and the witness's characterization of defendant as uneducated, illiterate and untrained in the law "may well have planted the seeds of doubt in the minds of the jury as to defendant's knowledge of the status of his license." We understand the state's position to be that, given the possibility of an inference that defendant did not know that his license was revoked, the jury may have based its

acquittal verdict on that issue rather than on the driving issue on which defendant now relies to invoke collateral estoppel.

 We find the state's position untenable. A defendant's knowledge of the status of his license is not an element of the crime of driving while suspended or revoked, *State v. Buttrey,* 293 Or 575, 583-86, 651 P2d 1075 (1982). Lack of knowledge may be an affirmative defense, ORS 487.560(2)(b), but there is no evidence in this record that such a defense was raised.[2] The instructions given by the trial court contain no suggestion that notice or knowledge of the suspension or revocation is an element of the offense. The record, therefore, is devoid of anything from which a jury rationally could have found that defendant's possible lack of understanding of the status of his license had any bearing on his guilt or innocence of the crime charged. We conclude that the sole rationally conceivable issue in dispute for the jury's determination was whether defendant was driving the vehicle. The jury by its verdict found that issue in favor of defendant. The doctrine of collateral estoppel, therefore, precludes the state from relitigating it.

The state also contends that defendant's request for severance of the two counts should be deemed a waiver of his right to rely on collateral estoppel, analogous to the waiver of double jeopardy resulting from a request for separate trials. *See State v. Boyd,* 271 Or 558, 533 P2d 795 (1975); *State v. Bishop,* 16 Or App 310, 518 P2d 177 (1974); *see also State v. Brissette,* 31 Or App 1243, 572 P2d 1068 (1977). That contention was resolved contrary to the state's position in *State v. Hollandsworth, supra,* 64 Or App at 47-48, and we decline to reexamine it here.

---

[2] We also note in passing that defendant's theory of the case negated any reliance on lack of notice of revocation as an affirmative defense. Counsel for defendant stated in his opening statement:

"[T]here's not going to be any attempt here to suggest that [d]efendant didn't know that his license was revoked, that there was any question in his mind about that point. But our point is that simply he was not the one driving."

The state's attorney also essentially conceded that point in closing argument:

"[S]omeone has said that [defendant] was driving * * *. Mr. Harvey [the other occupant of the vehicle] says, 'No, he wasn't. I was.' You're going to decide who to believe, and when you reach that decision, then you have reached your decision as to the appropriate verdict in this case."

The trial court did not err in dismissing count II of the indictment charging DUII.

Affirmed.