STATE ex rel Lorna C. ROBERTSON,
*Respondent,*

*v.*

Curtis E. ROBERTSON,
*Appellant.*

(882707; CA A69295)

859 P2d 550

Guy B. Greco, Newport, argued the cause and filed the brief for appellant.

Jas. Adams, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

RIGGS, J.

Edmonds, J., concurring in part; dissenting in part.

## RIGGS, J.

Father was held in civil contempt for failure to make child support payments. We affirm.

Father fell $15,000 behind in child support payments ordered by a judgment of dissolution. The state moved for father to show cause why he should not be found in civil contempt.[1] Father moved to dismiss the proceeding on the ground that only a criminal contempt sanction could be imposed for nonpayment of support. That motion was denied, but raised again at the show cause hearing.

At the hearing, the state presented proof that there was a valid order, that father knew of the order and that he had not complied. It also presented evidence that father owned an auto detailing business and grossed over $13,000 from a single customer in a recent 11-month period. The state submitted father's Affidavit of Indigency and Request for Appointment of Counsel. That affidavit listed father's income at $700-$800 a month, and listed his monthly child support obligation as $300, when it is $600. The affidavit omitted his spousal support obligation and listed his fiance and her son as dependents with no income. The state called father as a witness but he refused to testify, citing his privilege against self-incrimination. Father presented no evidence. The trial court found father in civil contempt and ordered him jailed until he paid the full child support arrearage.

Father argues on appeal that the trial court could not sanction a failure to pay child support with civil contempt. Father is wrong. "Contempt by failure to pay child support can be either criminal or civil." *State ex rel Gibbon v. West*, 118 Or App 580, 583, 848 P2d 637 (1993).

Father next argues that the trial court could not infer from his silence that he had a present ability to pay the arrearage. It is not clear that the trial court made that inference, but even if it did, it was harmless error because present ability to pay is not part of the state's *prima facie* case. *State ex rel Gibbon v. West, supra.* All the state must show is that father knew of a valid court order which he

---

[1] The motion to show cause was filed before the repeal of ORS 33.010 and ORS 33.020 by Oregon Laws 1991, chapter 724, section 32.

wilfully disobeyed. *Couey and Couey*, 312 Or 302, 306, 821 P2d 1086 (1991). Inability to pay is an affirmative defense which father chose not to present. *State ex rel Mikkelson v. Hill*, 315 Or 452, 456, 847 P2d 402 (1993).

■ Finally, father argues that the court erred by requiring him to pay the arrearage in order to purge the contempt. He argues that the court had insufficent evidence that he was presently able to pay the arrearage. If the evidence is insufficient, father's intransigence is to blame. Father had the burden of proving a present inability to pay. *State ex rel Mikkelson v. Hill, supra.* Although *Mikkelson* involved slightly different facts, we see no principled distinction which permits the application of *Mikkelson* to reach the result urged by the dissent. Father's purposeful failure to show inability to pay the arrearage is not grounds for setting aside the contempt.

Father's other argument is without merit and requires no discussion.

Affirmed.

**EDMONDS, J.,** concurring in part; dissenting in part.

The majority's answer to father's third assignment of error[1] violates Article I, section 19, of the Oregon Constitution, which says "there shall be no imprisonment for debt, except in case of fraud or absconding debtors." Neither exception applies. Because father invoked his right against self-incrimination, he is incarcerated until he pays the entire arrearage under the trial court's order. There is no evidence in the record that he has the present ability to pay that amount. The trial court concedes that fact when it says:

"[T]he reason there is insufficient evidence in the record to support the court's conclusion that [father] is capable of

---

[1] The three assignments of error are:

"I.    The trial court erred in holding that this was a case of civil contempt rather than criminal contempt.

"II.   The trial court erred in ruling that the Respondent's silence could be used against him in finding him in contempt of court and in finding that he could pay the full support arrearage to purge his contempt.

"III.  The trial court erred by requiring Respondent to pay $15,620.23 in order to purge himself of the contempt and be released from custody."

paying $15,620.23, is identical to the reason why he was *found* in contempt in the first place." (Emphasis in original.)

The result of the trial court's order is that father will remain incarcerated without the ability to comply with the condition that would trigger his release. It is that result that violates section 19.

In order to understand why the majority's result violates section 19, it is necessary to be cognizant of when, in the context of a contempt proceeding under *former* ORS chapter 33, the constitution is implicated. In the typical case, a support obligor was brought before the court to show cause why he should not be held in contempt of the court's order requiring him to pay support. The prosecuting party offered evidence of an unpaid accrued support obligation and that the obligor was aware of the obligation. That evidence was *prima facie* proof that the obligor was in contempt of the court's order requiring him to pay support. As an affirmative defense, the obligor could offer evidence that he did not have the ability to comply with the court order. In the event that the obligor was found to be in contempt and the sanction imposed was imprisonment,[2] the sanction did not implicate section 19. The reason was that the imprisonment was a punishment for the contempt in disobeying the order of support, not for the failure to pay the monthly support obligation which he had the ability to pay. *See State ex rel Hubble v. Hubble*, 128 Or 46, 273 P 395, *mod* 128 Or 667 (1929); *State v. Francis*, 126 Or 253, 269 P 878 (1928).

This case is not such a case because of the inability of father to pay the lump sum arrearage. This case implicates section 19 because father's imprisonment is not punishment for the wilful disobedience of the court's monthly support order. When the court's sanction is executed, each day, month or year that father serves will be the result of his inability to comply with the condition of release, not because he failed to make all his monthly support obligations. In fact, his imprisonment, *i.e.*, his punishment, will be for the failure to

---

[2] *Former* ORS 33.020 provided that imprisonment could not exceed six months except in those cases in which the court seeks to constrain performance of a lawful order.

pay the arrearage in a lump sum. In the language of section 19, his imprisonment occurs because of his "debt."[3]

The majority seeks to avoid section 19 through a legal fiction, one that is predicated on an erroneous view of the evidence. It says that there is evidence that father has the ability to pay the entire arrearage, and holds that father's ability to pay the entire arrearage can be implied from the fact that he was found to have had the ability to pay monthly support. That assertion is not founded on fact. A comparison illustrates why. In *State ex rel Mikkelsen v. Hill*, 315 Or 452, 458, 847 P2d 402 (1993), the court said that "a court permissibly may infer that a parent who was ordered to pay support previously had the ability to pay and continues to have the ability to pay." In other words, once an obligor is found to have the ability to pay an amount on a monthly basis, an inference arises, absent proof of a change of circumstances, that the obligor is able to pay that amount each month in the future. However, an inference that father has the present ability to pay a lump sum of $15,600 does not reasonably follow from the fact that he was found to have had the ability to pay child support of $600 per month and spousal support of $200 per month.[4] Moreover, that inference applies to the finding of contempt, not to the propriety of the sanction. There is no evidence in this record to support the conclusion that is the basis of the majority opinion.

In a civil contempt case, a party is said to hold the key to their confinement. *State ex rel Dwyer v. Dwyer*, 299 Or 108, 111, 698 P2d 957 (1985). For father's confinement to be lawful, he must have the "key" that will enable him to unlock the jail door; in other words, that he has the present ability to procure his release from custody. As the trial court admits, there is no evidence in the record from which the inference can be drawn that father is able to pay the lump sum of

---

[3] If father has the ability to pay the arrearage, then section 19 is not implicated. *See State ex rel Dean v. Dean*, 136 Or 694, 700, 300 P 1027 (1931); *State ex rel Hewson v. Hewson*, 129 Or 612, 277 P 1012 (1929). When an obligor has the financial ability to extricate himself from imprisonment under such circumstances, he is no longer being incarcerated because of the debt, but because of his unwillingness to comply with the court order.

[4] The effect of the majority opinion is to create a rebuttable presumption that an obligor always has a present ability to pay the entire arrearage regardless of its size.

$15,600. The trial court was right about that fact. The majority is wrong when it concludes to the contrary.

The majority also errs when it says that "[f]ather had the burden of proving a present inability to pay [in order to avoid the civil contempt sanction.]" 123 Or App at 160. The majority misreads *State ex rel Mikkelsen v. Hill, supra,* as authority for that proposition. The court held that the inability to comply with a support order was an affirmative defense to an allegation of contempt and that placing the burden on a defendant to go forward with proof of an affirmative defense did not violate the Due Process Clause of the Fourteenth Amendment. That holding is premised on the permissible inference arising from the prior support order that the obligor has the ability to comply with the order. Father's third assignment of error does not pertain to the finding of contempt, but to the sanction that followed and, therefore, does not involve an assertion of an affirmative defense which would disprove an element of the prosecution's case. The holding in *State ex rel Mikkelsen v. Hill, supra,* is inapposite.

Moreover, the burden of going forward with evidence which occurs under the circumstances set out in OEC 305 and OEC 307 is not applicable when the issue is the nature of the sanction to be imposed for contempt. Those statutes provide:

OEC 305:

> "*A party has the burden of persuasion as to each fact the existence or nonexistence of which the law declares essential to the claim for relief or defense the party is asserting.*"

OEC 307:

> "(1)    *The burden* of producing evidence as to a particular issue *is on the party against whom a finding* on the issue *would be required in the absence of further evidence.*
>
> "(2)    The burden of producing evidence as to a particular issue is initially on the party with the burden of persuasion as to that issue." (Emphasis supplied.)

Because there is no statutory or case law which declares it essential that father prove his ability to pay the accrued child support in order to be released from custody in a contempt proceeding, there is no burden of persuasion under OEC 305 or OEC 307 placed on him.

In summary, the majority errs when it affirms father's "life" sentence. Unless he has the ability to pay more than $15,600 in a lump sum, he remains incarcerated because of his "debt." The trial court's sanction violates section 19 because, without a finding that father has the present ability to pay the arrearage, he is being punished for not having the means to pay the entire arrearage. No inference arises that father has the ability to pay the entire arrearage from the fact that he has the ability to pay the monthly amounts that have been ordered. Moreover, father has no burden of persuasion under the law to offer evidence about his ability to pay the entire arrearage in the sanction proceeding. He is entitled to rest on his rights against self-incrimination, and it is incumbent on the state to offer such evidence if the court desires to impose such a sanction.

Perhaps the majority opinion is motivated by a commendable desire to reinforce the ability of trial courts to enforce support orders. At first blush, it is hard to resurrect any empathy for father. As the opinion points out, he is in wilful violation of the court's order requiring him to pay support. Clearly, there is a public policy underlying the obligation to support one's dependents, and we should not override that policy lightly. However, in this case, the principle of individual liberty also is implicated. Section 19 tells us that the constitutional framers intended that individuals not be imprisoned because of an inability to pay their debts. It must have been the kind of predicament[5] that father is in that caused the constitutional framers to provide that debtors could not be incarcerated because of their debts. The mandate

---

[5] Under the majority's decision, everyone loses: section 19 is rendered meaningless; father stays incarcerated; the cost of father's incarceration is borne by the taxpayer; and father's dependents do not receive support in the future because father is unable to work, earn money, and pay the required support. Father's situation is not unlike the cougar treed by baying hounds. With the specter of criminal nonsupport charges lurking, he climbed the tree of the right against self-incrimination. It appears that act incurred the wrath of the trial court and motivated it to impose this sanction even though it knew there was no evidence that father could write a check for $15,600. Now that father is at the top of the tree with no place to go, the majority cuts down the tree. That decision would be justified only if father had the ability to pay the arrearage. Sanctions for contempt must be imposed in a manner that will accommodate the constitutional rights of the obligor as well as the obligations owed to dependents. One can justifiably cheer that this sanction will motivate father to pay his obligations when and if he gets out of jail, but is that result worth the sacrifice of a cherished constitutional right?

of section 19 can only be fulfilled if we require that there be evidence that father and others like him have the ability to meet the condition of release imposed by the court before the court has the authority to order such a sanction.

I concur in the majority's disposition of the first two assignments of error, but for the reasons expressed, I dissent to the majority's holding regarding the third assignment of error.

Richardson, C. J., Warren and Leeson, JJ., join in this concurring and dissenting opinion.